JULIUS MICHELSON *vs.* THE FRANKLIN FIRE INSURANCE COMPANY OF PHILADELPHIA.

Suffolk.   December 11, 1924. — May 21, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Insurance,* Fire: cancellation; Waiver of notice. *Agency,* Scope of authority. *Broker,* Insurance. *Notice. Waiver. Evidence,* Presumptions and burden of proof. *Practice, Civil,* Ordering of verdict.

In an action against an insurance company upon a policy of insurance against loss by fire, alleged to have been issued by the defendant, it appeared that the defendant delivered the policy to an insurance broker whom the plaintiff had employed to act as his agent in procuring this particular insurance; that the next month the defendant rendered a bill to the broker for the premium; that the broker did not deliver the policy to the defendant because he previously had had difficulty in collecting premiums and that he sent the plaintiff a bill for the premium three months after he had received the policy.   There was evidence that directly after rendering such bill the broker had a conversation with the plaintiff in which he insisted that unless the premium was paid he would return the policy to the defendant, to which the plaintiff made no objection; that a few days later, the premium not having been paid by the plaintiff, the broker returned the policy to the defendant and it was marked as cancelled; that thereafter the insured premises were injured by fire, and that the plaintiff then interviewed the broker, paid him the premium, and afterwards notified him about the fire.   The broker testified that he received the payment understanding that it was for a new and different policy and that upon learning of the fire he offered to return the premium.   The only provisions in the policy as to cancellation by the defendant required that a notice be given to the

plaintiff before cancellation. There was no express provision that the policy should not attach until the premium was paid. The judge ordered a verdict for the plaintiff. The defendant alleged exceptions. *Held*, that

(1) It was not a necessary inference from the evidence that the parties intended that the insurance policy should be operative only when delivered to the insured upon payment by him of the premium;

(2) While as a matter of law a finding was not required that the broker was authorized by the plaintiff to effect a cancellation of the policy, the evidence warranted a finding that the plaintiff had clothed him with authority to receive the notice of cancellation required by the policy and had empowered him, in view of the fact that he had paid nothing for the policy and had had the benefit of it for some time, to return the policy for cancellation without notice; and the question, whether such authority had been given, should have been submitted to the jury;

(3) It was error to order a verdict for the plaintiff.

CONTRACT upon two policies of insurance against loss by fire. Writ dated July 29, 1922.

In the Superior Court, the action was tried before *Hall*, C.J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered for the defendant. The motion was denied. Subject to an exception by the defendant, the Chief Justice ordered a verdict for the plaintiff in the sum of $3,284.16, and reported the action to this court for determination.

*W. L. Came*, for the defendant.

*C. L. Favinger*, for the plaintiff.

RUGG, C.J. This is an action of contract to recover on two policies of fire insurance. It appears to have been undisputed that the local agents of the defendant in November, 1921, delivered the two policies in the usual Massachusetts standard form to one Compton, an insurance broker who had applied for them at the request of the plaintiff. The defendant's agents rendered bills for the premiums to Compton for the first time in December, 1921. Compton did not deliver the policies to the plaintiff because he had theretofore had difficulty in collecting premiums from the plaintiff in time to pay the companies. Compton made demands upon the plaintiff for the premiums and sent him bill for same on February 26, 1922. The property covered by the policies was injured by fire on March 25, 1922. On the

next day the plaintiff paid Compton the premium and the latter gave the plaintiff a receipt. Thereafter the plaintiff told Compton of the fire. In the very last of February, or in March before the ninth, Compton returned the policies to the agents of the defendant and they were cancelled as of their date and the charge for premiums was cancelled. Each policy bore a stamp purporting to show cancellation on March 9, 1922.

There was evidence, which was contradicted, tending to show that Compton, between February 26 and March 9, said to the plaintiff that, if he did not pay for the policies, they would have to be returned and that the plaintiff said he was unable to pay for the policies; that Compton received the payment of the premium understanding that it was for new insurance, but at the same interview, on being notified of the fire, he offered to return the premium to the plaintiff, who refused to accept it.

Each policy contained these provisions: "This policy may be CANCELLED at any time at the request of the insured, who shall thereupon be entitled to a return of the portion of the above premium remaining, after deducting the customary monthly short rates for the time this policy shall have been in force. The company also reserves the right, after giving written notice to the insured and to any mortgagee to whom this policy is made payable, and tendering to the insured a ratable proportion of the premium, to cancel this policy as to all risks subsequent to the expiration of ten days from such notice, and no mortgagee shall then have the right to recover as to such risks. . . . If the premium on this policy has not been paid to the company or its agent or to the duly licensed insurance broker through whom the contract of insurance was negotiated, this policy may be cancelled by the company in the manner herein provided without tendering to the assured any part of the premium."

No oral or written notice was given to the plaintiff under the terms of the policy of intention to cancel the policies or of the fact that they had been cancelled.

Compton was an insurance broker. G. L. c. 175, § 162.

The work performed by him, as shown on this record, indicates that he was acting as a kind of middleman between the insured and the agents of the insurer. *Arff* v. *Star Fire Ins. Co.* 125 N. Y. 57, 63. *Northrup* v. *Piza*, 43 App. Div. (N.Y.) 284, 289; affirmed, 167 N. Y. 578. He appears to have been acting as agent for the plaintiff in undertaking to procure the particular insurance. There is no evidence tending to show that he was the general agent to place and manage insurance for the plaintiff. His agency for the plaintiff extended no further than the specific insurance in question. *Commonwealth Mutual Fire Ins. Co.* v. *Fairbank Canning Co.* 173 Mass. 161, 164. *Sheridan* v. *Massachusetts Fire & Marine Ins. Co.* 233 Mass. 479. *Stilwell* v. *Mutual Life Ins. Co. of New York*, 72 N. Y. 385, 391. Being a broker, he was by G. L. c. 175, § 169, agent of the defendant for the purpose of receiving the premiums on the policies. He therefore occupied a dual relation, owing a duty to both parties.

The fact that for some purposes Compton was the agent of the plaintiff as well as agent for the defendant for the collection of the premium distinguishes this case from *Hoyt* v. *Mutual Benefit Life Ins. Co.* 98 Mass. 539, *Markey* v. *Mutual Benefit Life Ins. Co.* 118 Mass. 178, 193, *Myers* v. *Liverpool & London & Globe Ins. Co.* 121 Mass. 338, *Wainer* v. *Milford Mutual Fire Ins. Co.* 153 Mass. 335, and *Cunningham* v. *Connecticut Fire Ins. Co.* 200 Mass. 333, 337. It is not a necessary inference from the evidence that the parties intended that the policies should be operative only when delivered to the insured upon payment by him of the premium. The policies were delivered to Compton in November and remained in his possession until late in February, a period of about three months. They were delivered on his credit and bill therefor was not sent him until December, 1921. Compton did not deliver the policies at once to the plaintiff in order to protect Compton's primary liability to the defendant for the premium; it was not to protect the defendant. We are not dealing here with a case where the delivery to the broker or agent of the plaintiff was immediately revoked, as in *Kooistra* v. *Rockford Ins. Co.* 122 Mich. 626. It seems

manifest that, if the fire had occurred late in November, the policies had attached and the plaintiff could have recovered. The delivery to Compton was in these circumstances a delivery to the agent of the plaintiff. There was no express provision that the policies should not attach until paid for. None can be implied from the facts shown.

The only way in which the defendant could cancel the policies as of right without the consent of the plaintiff, after they had once attached, was by observing the provisions of the policies in that regard. Confessedly that was not done. Hence it could not rightly have been ruled as matter of law that the plaintiff could not recover.

An agent to procure insurance is not from that engagement alone authorized to effect a cancellation of the policy. *Grace* v. *American Central Ins. Co.* 109 U. S. 278, 282. *Adams* v. *Manufacturers' & Builders' Fire Ins. Co.* 17 Fed. Rep. 630. *Hermann* v. *Niagara Fire Ins. Co.* 100 N. Y. 411, 415. *Johnson* v. *North British & Mercantile Ins. Co.* 66 Ohio St. 6, 16.

Compton testified in substance that, not having the money to advance, he asked Michelson if Michelson could pay him on these policies then and Michelson said he could not, that he was "broke." Whereupon, Compton told him, "Well, the company is calling for the money or the policies and I must deliver either one or the other." He testified that he had undoubtedly sent bills to Michelson for the premiums on these policies shortly after he, Compton, had received them. He had also seen Michelson in person for the purpose of collecting the money, but he could never get the money; and this particular conversation took place just before the cancellation. "It was the last call" and some time after the bill of February 26. In this conversation, he told Michelson that he must either have the money or he, Compton, would have to return the policies. He told him that the companies were demanding that the policies be returned or paid for and all Michelson said was, "I can't pay you now, I am broke." Whereupon Compton said that he could not pay for them; that he was pretty low in money himself and that he must return the policies and that was the end of the conversation.

Compton returned the policies in person to the agents of the defendant some time prior to the date of cancellation of the policies, March 9, 1922.   He returned them for the purpose of being cancelled.   This testimony was contradicted by the plaintiff, but the jury might have believed it.   If it was the truth, it was sufficient to support a finding that the plaintiff clothed Compton with authority as his agent to waive the requirement of the policies for ten days written notice to the insured of cancellation, and empowered him, in view of the fact that he had paid nothing for the policies and had had the benefit of them for some time, to return the policies for cancellation without notice.   Whether this was so was a question of fact to be determined by the jury under appropriate instructions.   It was error to rule as matter of law that the plaintiff was entitled to recover on the policies.

*New trial granted.*