WILLIAM B. STRONG, SR., trustee, vs. MERCHANTS MUTUAL
INSURANCE COMPANY & others. [1]

Middlesex.    February 13, 1973. — April 9, 1974.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Insurance,* Fire insurance: cancellation. *Notice.  Mortgage,* Of real
   estate: fire insurance, possession by mortgagee. *Damages,* For
   wrongful cancellation of insurance, Against mortgagee in posses-
   sion, Nominal damages.

A notice of cancellation of a fire insurance policy given by the insurer
   to the insured which neither tendered payment of an unearned
   portion of the premium paid nor stated that such portion would
   be refunded on demand did not comply with the cancellation
   clause contained in the policy as required by G. L. c. 175, § 99,
   and was invalid and ineffective as between the insurer and the
   insured.   [147-149]
Where a notice of cancellation of fire insurance policies in an amount
   required to cover the debt under a mortgage on the insured
   property was given by the insurer to the insured and the mortgagee
   and the insured had not had the insurance restored more than two
   weeks thereafter, the mortgagee then was justified in determining
   that there had been a breach of both the insurance covenant in
   the mortgage and the statutory condition and in entering and
   taking possession of the property, without formal notice or
   demand, even though as between the insurer and the insured the
   cancellation notice was invalid and ineffective.   [149-150]
Where it appeared that by reason of an allegedly wrongful cancel-
   lation of fire insurance by the insurer a first mortgagee of the
   insured property took possession thereof and that subsequently a
   second mortgagee took possession for default under the second
   mortgage and over a period paid the first mortgagee substan-
   tial amounts due from the owner to the first mortgagee, a claim
   by the owner in a suit in equity against the insurer, that the
   owner was entitled to damages against the insurer on the ground
   that the entire liability of the owner to the second mortgagee
   was due to the insurance cancellation, was not supported by

[1] Warren Five Cents Savings Bank of Peabody, Allen B. Schwartz
and Duco Associates, Inc.

a master's report and a final decree in favor of the insurer was affirmed. [150-152]

The plaintiff in a suit in equity by the insured under a fire insurance policy against the insurer was not entitled to nominal damages where, although a cancellation of the policy by the defendant was in breach thereof, no damage to the plaintiff thereby was proved. [150]

In a proceeding by the owner of property against a mortgagee thereof which had taken possession, a claim of the plaintiff, essentially in tort, that the defendant had "conducted its possession negligently," could not be based merely on an alleged failure "to comply with the requirements of G. L. c. 244, § 20, for an accounting." [151]

BILL IN EQUITY filed in the Superior Court on March 17, 1970.

The suit was heard by *Roy, J.*, on a master's report.

*Joseph M. Cohen* for William B. Strong, Sr., trustee.

*John M. Crean* for Warren Five Cents Savings Bank of Peabody.

*Edward Nappan* for Merchants Mutual Insurance Company.

*Ralph Davis (Allen B. Schwartz* with him) for Duco Associates, Inc. & another.

GOODMAN, J. This is a bill for declaratory and other relief (G. L. c. 231A, § 1). The plaintiff, trustee of the Berkeley Trust, seeks a determination that a notice by the defendant Merchants Mutual Insurance Company (insurer) cancelling fire insurance on property owned by the trust was invalid. The plaintiff also seeks a determination that the resulting entry on the property by the Warren Five Cents Savings Bank of Peabody (bank), the holder of a first mortgage thereon, was consequently invalid, as was the subsequent entry by the defendants Allen B. Schwartz and Duco Associates, Inc., joint holders of a second mortgage (second mortgagee). In addition the plaintiff seeks damages from the insurer for wrongful cancellation and from the bank for wrongful possession. The case was referred to a master who filed a report, limited to an accounting, and thereafter a final report which incorporated the first report and to which were appended the plaintiff's objections to the final

report and summaries of evidence relating to certain of the objections. The court confirmed the master's report and entered a final decree declaring that the insurer's cancellation of the policies on the plaintiff's premises "was valid and in accordance with the provisions of the insurance contract between the petitioner and the . . . [insurer]," that the bank's consequent possession of the premises was justified by its mortgage, and that the possession thereafter taken by the second mortgagee was also valid. The decree further declared the indebtedness of the plaintiff to the second mortgagee as of October 29, 1970, and that none of the defendants was liable to the plaintiff in respect to any matter alleged in the bill. The case is here on the plaintiff's appeal from an interlocutory decree confirming the master's report, from an order discharging a lis pendens and from the final decree.

The pertinent facts from the master's report (including the exhibits incorporated therein) are as follows: The plaintiff mortgaged the property in question on October 2, 1967, to the bank to secure a note for $116,500 payable in monthly installments of $1,292 to cover principal, interest and taxes. On December 11, 1968, the plaintiff gave a second mortgage to secure his note for $10,000 to the second mortgagee. The mortgage to the bank contained a covenant "[t]o insure in sums and in companies satisfactory to the mortgagee and for its benefit . . . against fire . . .."[2] On October 23, 1968, two fire insurance policies on the property were issued by the insurer, each for $60,000 and each for a period of three years. On October 30 a premium of $945 for each policy was paid, covering the entire three year period. Thereafter, about December 31, 1968, the premium on each of

---

[2] That mortgage was also made "upon the STATUTORY CONDITION" (G. L. c. 183, § 20), which includes a similar provision that the mortgagor "shall keep the buildings . . . insured against fire in a sum not less than the amount secured by the mortgage . . . for the benefit of the mortgagee . . . and assigns, in such form and at such insurance offices as they shall approve . . .."

these two policies was increased to $1,278, and the plaintiff was billed for the difference; the plaintiff did not pay it in spite of subsequent invoices sent to him. On August 29, 1969, the insurer sent cancellation notices covering the two policies to the bank and the plaintiff.[3] The bank received its notices on September 3 and during the first week of September advised the plaintiff of the cancellations and asked him to see to it that the property was insured. On September 10 the assistant treasurer of the bank told the plaintiff that all three policies had been cancelled and, as the master found, "repeated essentially the content of the [bank's] letter of 9/3/69" which it had sent to the plaintiff and which had stated that "failure to maintain satisfactory fire insurance coverage . . . is a default of your mortgage . . .."[4]

On September 16, 1969, the bank entered into possession ("properly and rightfully," the master found), notified the plaintiff, hired a firm to manage the property and placed insurance on the property adequate to cover the amount of the mortgage. Thereafter, on October 8, the insurer reinstated the two insurance policies, and on October 10 counsel for the bank advised the plaintiff by letter that it had received notice of the reinstatement and was in the process of preparing a statement of its expenses and information concerning the "status of the account." By letter of October 20 the bank's attorney notified the plaintiff that he had been instructed to commence foreclosure proceedings and suggested that the plaintiff "pay up and avoid the

---

[3] A cancellation notice was also sent on a third policy written July 18, 1968. This cancellation has not been regarded as material by the parties, perhaps because the two policies of October 23, 1968, were in sums sufficient to cover the mortgage debt.

[4] While the letter of September 3 referred specifically only to the policy issued on July 18, 1968 (see fn. 3), there is nothing to indicate that this in any way misled the plaintiff to his prejudice prior to September 10 when, at the latest as appears from the master's report, the matter was clarified.

expense involved in foreclosure." By letter of October 21 the bank notified the plaintiff's attorney that it was prepared to turn over the property to the plaintiff upon payment of $2,778.54, which was itemized, plus "any legal fees in connection with the matter." The letter also advised the plaintiff's attorney that "[t]he account has been turned over to our attorney to start foreclosure proceedings, and unless the above total is paid by October 31, 1969, he will be instructed to proceed accordingly." The plaintiff, however, made no further payments to the bank; his last payment was on September 12, 1969, representing the monthly payment due on August 15, 1969.

The bank remained in possession until December 5, 1969, when the second mortgagee took possession because of a default in monthly payments, the last payment to the second mortgagee having also been made on September 12, 1969. The second mortgagee paid the bank the amount due from the plaintiff for the period, September 15, 1969, to December 5, 1969, and thereafter managed the property and continued making the monthly payments due to the bank from the plaintiff. As of October 29, 1970, the plaintiff owed the second mortgagee a total of $24,225.65, representing the principal of the second mortgage note in the amount of $10,000 plus interest thereon, management expenses, and payments made to the bank, the latter two items continuing to (at least) the date of the master's report. In addition, the master found that there was owing from the plaintiff to the second mortgagee $1,750 for legal fees, making a total of $25,975.65. On March 15, 1970, the second mortgagee advertised a foreclosure auction sale of the property to take place on March 19, 1970. On March 17, 1970, the bill for declaratory relief in this case was entered and a temporary restraining order issued.[5]

[5] We are informed that on June 21, 1971, there was a foreclosure sale and auction and that the property was sold pursuant to the second mortgage.

The plaintiff's primary attack is on the declaration in the decree that the notices of cancellation by the insurer were valid, and from that he argues that the bank wrongfully took possession. We agree that the cancellation notices were invalid as between the plaintiff and the insurer; but it does not follow that the bank's possession was wrongful.

1. *The cancellation notices to the plaintiff.* The insurance policies contained the standard form cancellation clause[6] as required by G. L. c. 175, § 99 (prior to St. 1969, c. 425, § 1). That clause required that any cancellation notice should either be accompanied by a tender of the unearned premium or state that the unearned premium would be refunded on demand. The notices given by the insurer to the plaintiff list four statements concerning the status of his premium, two relevant if the premium has not been paid,[7] and two relevant if a return of unearned premium is due.[8] Each statement is preceded by a small box, and the following note appears

---

[6]"This policy may be cancelled at any time by this company by giving to the insured and to any mortgagee to whom this policy is payable a 10 day's written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. *Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand*" (emphasis supplied).

[7]"NON-PAYMENT OF PREMIUM

"1. Please return this policy to us with remittance of $....., being the amount of earned premium for time it has been in force at date of cancellation.
"2. As the premium due has not been received by this Company for this insurance, there is none to be returned."

[8]"PREMIUM PAID

"1. Enclosed find $....., being amount of return premium at pro rata rate for the unexpired term of this policy.
"2. The excess of paid premium, if any, above the pro rata premium for the expired time, (if not tendered) will be refunded upon demand."

below: "AGENT NOTE: The above additional information must appear on original copy of Cancellation Notice mailed to the Insured and on the carbon copies. Place an 'X' in the box at the left of the condition applying." No "X" was placed in any of the boxes on the cancellation notices sent to the plaintiff, and the amounts were left blank.

It is clear from the master's report that when the cancellation notices were sent there was an "excess of paid premium . . . above the pro rata premium for the expired time."[9]  These unearned premiums were not' tendered — as appears from the failure to check the first statement under the heading, "PREMIUM PAID" (fn. 8) — and the failure to check the last statement indicated, if anything, that nothing would be refunded on demand. The notices of cancellation were thus ineffective to cancel the insurer's liability on the policies to the plaintiff. "A notice of cancellation of insurance must be definite and certain. . . .  Conditions imposed with respect to giving notice must be strictly complied with . . . [citing *Michelson* v. *Franklin Fire Ins. Co.* 252 · Mass. 336, 340 (1925)]." *Gulesian* v. *Senibaldi,* 289 Mass. 384, 387 (1935). *Fields* v. *Parsons,* 353 Mass. 706 (1968). See *White* v. *Edwards,* 352 Mass. 655, 657 (1967). And "[c]ompliance with the provision of the policy that the notice of cancellation state that the excess premium will be refunded on demand is essential to a valid cancellation upon notice." Couch, Insurance (2d ed.) § 67:155, p. 489.  43 Am. Jur. 2d, Insurance, § 405, p. 450.

---

[9] The master found that on each of the two policies in dispute $945 of the $1,278 premium had been paid.  He also found that the policies were effective on October 22 of 1968 for a term of three years, and that they were cancelled on August 29, 1969, about twenty-eight per cent of the way into the term.  Thus it would appear that the "pro rata premium for the expired time" on each policy (see fn. 6) was twenty-eight per cent of $1,278, or about $358, while the "paid premium" was $945, leaving an "excess" of about $587 to be returned to the plaintiff.

While we have found no case in which the Supreme Judicial Court has dealt with these specific circumstances, our decision is in accord with those from other jurisdictions. See *Petersen* v. *Ohio Cas. Ins. Co.* 131 Neb. 128, 137 (1936), collecting cases from a number of other jurisdictions; *Allied Concord Financial Corp.* v. *Sterling Ins. Co.* 251 S. C. 38, 40-41 (1968); *Pellets, Inc.* v. *Millers Mut. Fire Ins. Co.* 241 So. 2d 550, 553 (La. App. 1970), cert. den. 257 La. 607 (1971). The case of *First Natl. Bank in Chicago Heights* v. *Home Ins. Co.* 350 F. 2d 577 (7th Cir. 1965), cited by the insurer, is distinguishable since the policies in that case had been surrendered with the consent of the insured, who thus in effect waived any defect in the notice. See *Michelson* v. *Franklin Fire Ins. Co.* 252 Mass. 336 (1925), in which the court, after holding that provisions for cancellation had not been strictly complied with, sent the case back for a new trial on the question whether there had been a surrender.

2. *The bank's possession.* Though the cancellations were not sufficient to relieve the insurer of its obligations to the insured, it does not follow that the bank, upon receipt of notices from the insurer that the policies were being cancelled, was not entitled to take possession. Whether or not the cancellation notices sent to the bank were invalid as between the bank and the insurer, which we need not determine, the bank was not required to attempt at its peril to decide the matter. The bank was clearly within its rights in advising the plaintiff that it considered the insurance coverage to be unsatisfactory and to constitute a ground for treating the mortgage as in default. Insurance in a company which was in effect disavowing liability could hardly be said to be such as "ought to satisfy any reasonable mortgagee." *McCombs* v. *Elmes,* 197 Mass. 19, 21 (1907). *Townsend* v. *First Fed. Sav. & Loan Assn.* 153 Fla. 535 (1943). The bank could therefore, as it did, regard the cancellations and the subsequent temporizing by the plaintiff (who did not

have the insurance restored until October 8) as a breach of the covenant in the mortgage "[t]o insure . . . in companies satisfactory to the mortgagee" as well as a breach of the statutory condition. The bank's entry and possession on September 16, 1969, was therefore proper. No formal notice or demand was necessary. *Joyner* v. *Lenox Sav. Bank*, 322 Mass. 46, 53 (1947). See *Miller* v. *Perry*, 333 Mass. 155, 159 (1955).

3. *Damages.* The plaintiff contends that he is entitled to damages caused by the wrongful cancellation and objected to the master's report on the ground that, as a matter of law, the entire liability of the plaintiff to the second mortgagee, found by the master, was due to the wrongful cancellation of the policies by the insurer. But the master's report makes no finding whether or to what extent the plaintiff's liability to the second mortgagee resulted from the cancellation of the insurance policies, which were reinstated in about a month. Further, no findings were made as to the effect, if any, of the possession, rightfully taken by the bank and the second mortgagee, and the acts or omissions of the plaintiff. Nor did the plaintiff make "a motion to recommit with directions to make [such] findings." *Sheppard Envelope Co.* v. *Arcade Malleable Iron Co.* 335 Mass. 180, 184 (1956), and cases cited. We therefore do not modify the provision of the final decree that "the respondents are not liable to the petitioner in respect to any matters alleged in the [b]ill of [c]omplaint." At law, the plaintiff would be entitled to at least nominal damages on account of the cancellations in breach of the insurance contracts. See *Driscoll* v. *Bunar*, 328 Mass. 398, 403 (1952); Annot., 34 A. L. R. 3d 385, 393-398; Couch, Insurance (2d ed.) § 67:428, p. 653. But in the circumstances of this case in which there was no proof that any damage arose from the breach of contract "[e]quity pays no attention to nominal damages." *Fred T. Ley & Co. Inc.* v. *Sagalyn*, 302 Mass. 488, 495

(1939). *Buckley* v. *White*, 328 Mass. 653 (1952). Cf. *DiNardo* v. *Dovidio*, 312 Mass. 398, 404-405 (1942).

The plaintiff also contends that he is entitled to damages because "the bank conducted its possession negligently in that it failed to comply with the requirements of G. L. c. 244, § 20 for an accounting." We are of the opinion that § 20, which "appears under the subtitle 'Redemption'" (*Krikorian* v. *Grafton Co-operative Bank*, 312 Mass. 272, 276 [1942]) see G. L. c. 244, §§ 19, 21, 22, 24), cannot (without more; cf. *Sandler* v. *Silk*, 292 Mass. 493, 498 [1935]) be made the basis of a cause of action which, as the plaintiff's brief indicates, is essentially in tort and unconnected with a claim for redemption — which this bill is not — or with a similar claim involving the satisfaction of the mortgage debt, e.g., a suit for a deficiency (*City Inst. for Sav.* v. *Kelil*, 262 Mass. 302, 307 [1928]) or for a surplus (*Davis* v. *Newburyport Five Cents Sav. Bank*, 311 Mass. 377, 386-387 [1942]). See Osborne, Mortgages (2d ed. 1970) § 165, p. 287; Glenn, Mortgages (1943) § 206, p. 1035. The purpose of § 20 is to enable the mortgagor to make a proper tender; but whether or not a proper tender is made does not affect the original possession taken for default or a subsequent sale. *Sandler* v. *Green*, 287 Mass. 404, 407 (1934); the court said, "Such a tender gave the plaintiffs no rights at law, but merely furnished them the foundation for an equitable remedy by suit for redemption under G. L. (Ter. Ed.) c. 244, § 21, of which they have not, on this record, availed themselves. Nor are the plaintiffs seeking here the equitable relief under G. L. (Ter. Ed.) c. 244, § 22, which may be had without tender."

In accordance with this opinion, the final decree is modified (a) by striking paragraphs 1 and 2 and substituting instead the following paragraph: "1. That the notices dated August 29, 1969, given to the petitioner by the respondent Merchants Mutual Insurance Company

purporting to cancel insurance policies numbered FE214676 and FE214677 on petitioner's property located at 458 Beacon Street, Boston, Massachusetts, were in violation of the standard form cancellation clause in those policies and G. L. c. 175, § 99 (prior to St. 1969, c. 425, § 1) and were therefore ineffective to cancel those policies." and (b) by renumbering paragraphs 3 to 8 inclusive to be paragraphs 2 to 7 inclusive, and as so modified the final decree is affirmed. The appeal from the interlocutory decree confirming the master's report and the appeal from the order allowing a motion to discharge the lis pendens raise no questions not disposed of in this opinion; the interlocutory decree is affirmed and, treating the order allowing the motion to discharge the lis pendens as a decree, it is also affirmed. Costs of appeal are not to be awarded to any party.

*So ordered.*