JOHN W. PRIESTLEY, JR. & another *vs*. SHARAF'S, INC.

Suffolk.    April 14, 1975. — March 31, 1976.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Contract,* Performance and breach, Cancellation.   *Landlord and Tenant,* Cancellation of lease.   *Damages,* Breach of contract.

Where an indemnification clause of a lease was conditional upon continuation of a tenant's default for a period of seven days after written notice from the lessor to the lessee specifying such default, the failure of the lessor to send written notice to the lessee of its default rendered the clause inoperative.  [221-223]

Under a lease which provided that the rent due during an extension period of the lease was to be "at a rate then agreed upon by the lessor and the lessee, or failing such agreement at the rate decided by three arbitrators," and that "[p]ending decision by the arbitrators, rent shall continue at the rate of $615 monthly, but shall be adjusted as of [the date of renewal of the lease] . . .," neither the lessor's acceptance of $615 rent checks in the early months of the extension period nor its delay in presenting a written claim for an increased rent required a finding of an implied agreement that the rent remain unchanged or a waiver by the lessor of its right to claim an increased rental.  [223-224]

CONTRACT.   Writ in the Superior Court dated October 30, 1968.

The action was heard by *Ronan, J.*

*Joseph J. Hurley* for the defendant.

*Thomas J. Carens* for the plaintiffs.

ARMSTRONG, J.   This is a contract action brought against a lessee (Sharaf's) to recover rents allegedly due under the lease from May, 1965, to October, 1967 (count 1) or, alternatively, the reasonable rental value of the leased premises during the same period (count 2).[1]   The

---

[1] Not before us (because no appeal was taken by the plaintiffs) is a third count for damages for failure to restore the leased premises to tenantable condition, on which there was a finding for Sharaf's.

trial judge (sitting without jury) ordered judgment for the plaintiffs on each count in the amount of $21,235. Sharaf's took exceptions to the order for judgment and to the denial of certain of its requests for rulings. Its bill of exceptions, having been presented but not allowed before July 1, 1974, is treated as a notice of appeal. Mass.R.Civ.P. 1A (7), 365 Mass. 732 (1974).

The term of the original lease between Sharaf's and the plaintiffs' predecessor in title, one Graham, ran from May 1, 1960, to April 30, 1965. The lease gave Sharaf's an option to extend the lease for an additional five years, by notice in writing to the lessor prior to March 1, 1965. Graham died in September, 1964, and Sharaf's, on February 25, 1965, sent notice of exercise of the option to Old Colony Trust Co. (bank), the executor of Graham's estate.

The rent payable by Sharaf's during the first five years had been $615 per month. The rent during the five-year extension was to be "at the rate then agreed upon by the Lessor and the Lessee, or failing such agreement at the rate decided by three arbitrators, one to be chosen by the Lessor, one by the Lessee, and the third by the two so chosen ... Pending decision by the arbitrators, rent shall continue at the rate of ... $615 ... monthly, but shall be adjusted as of May 1, 1965 upon the rendering of the decision by the arbitrators." The extension rental was never so determined; rather, the question of the new rental was permitted to drift undecided through the spring and summer of 1965 and did not come to a head until October of that year. The circumstances were these.

From October, 1964, through February 25, 1965, when the option to extend was exercised, Sharaf's was engaged in negotiations with the bank for the possible purchase of the building in which the leased premises were located. These negotiations did not terminate until May, 1965. In July, 1965, the bank received offers from the plaintiffs to purchase the building, and in August the bank and the plaintiffs entered into a purchase and sale agreement, under which title was to pass on October 28, 1965, and which

was expressly made contingent on the provision in the lease for arbitration of Sharaf's rent being "still in full force and effect." The plaintiffs were "given permission to initiate negotiations with Sharaf's . . . for determination of [the] rental to be paid by it during the extended term of the lease. No agency or power of attorney is to be construed by this permission and the Seller [bank] shall not be bound . . . by any such negotiations without its specific written assent."

On August 19, 1965, the plaintiffs initiated discussions with Sharaf's, and, following a meeting with a representative of Sharaf's in early September, sent Sharaf's a letter, dated September 9, 1965, proposing that the new rent be $1,200 per month. Sharaf's replied on September 15, rejecting any increase in the rental and offering to surrender the premises if the plaintiffs thought they could obtain a higher rental from another tenant.

On October 1, 1965, the bank sent Sharaf's a letter requesting payment of $517.50 for the year 1965 pursuant to a clause of the lease requiring Sharaf's to bear 45 per cent of any increase in Boston real estate taxes assessed on the building over the taxes assessed in 1959. The bank's letter made no reference to the question of the rental for the extended term. Sharaf's remitted the sum requested on October 15, in a letter which stated its position on that question to be that the bank, by accepting payment of the $615 monthly rent checks from the beginning of the extended term (May 1) without objection, and without seeking arbitration, had in fact by its conduct agreed with Sharaf's that the rental for the extended term was to remain the same ($615 per month) as for the original term, subject only to the tax escalation clause. On October 25 the bank, by a letter which did not refer to the previous correspondence, notified Sharaf's that the rental for the extended term was to be $1,200 per month, effective May 1, 1965, and that if Sharaf's did not agree to that rate, the bank claimed arbitration. The letter named the arbitrator selected by the bank. There is no evidence of

correspondence or discussions thereafter between the bank and Sharaf's concerning a new rental.[2]

The plaintiffs purchased the building from the bank in December, 1965. They received January and February, 1966, rent checks from Sharaf's, each in the amount of $615, and, after crossing out notations reading "Rent paid in full...," deposited them. There was evidence that Sharaf's failed or refused to appoint an arbitrator,[3] that thereafter the plaintiffs asked or demanded that Sharaf's vacate the premises, that Sharaf's did so in March or April, 1966, and that the premises were thereafter vacant until October or November of 1967 notwithstanding efforts of the plaintiffs to let them before that time.

The lease contained a provision whereby Sharaf's covenanted to indemnify the lessor for lost rent in the event of termination of the lease due to a default by Sharaf's. Compare *Edmands* v. *Rust & Richardson Drug Co.* 191 Mass. 123, 126-127 (1906); *Gardiner* v. *Parsons,* 224 Mass. 347, 350 (1916); *Wentworth Bldg. Corp.* v. *Bernstein,* 346 Mass. 770 (1963). It is evident from the amount of the plaintiffs' recovery that it included a substantial sum (we cannot ascertain an exact figure) for lost rentals subsequent to termination.

The indemnification clause[4] was, however, conditional

---

[2] There was testimony that on November 17 the bank sent a letter to Sharaf's stating that the additional payment due on account of the real estate taxes had been miscalculated and asking Sharaf's to remit an additional $186.30, and that Sharaf's never remitted the additional sum requested.

[3] Although the point is not crucial on the view we take of the case, it is our opinion that the testimony of John W. Priestley warranted a finding that Sharaf's *refused* to name an arbitrator notwithstanding the plaintiffs' allegations that Sharaf's *failed* to name an arbitrator. See G. L. c. 231, § 87 (as in effect prior to St. 1973, c. 1114, § 190). Such a finding would not contradict, but rather would tend to support, the allegations by which the plaintiffs are assertedly bound. See *Adiletto* v. *Brockton Cut Sole Corp.* 322 Mass. 110, 112 (1947). See also *Broman* v. *Byrne,* 322 Mass. 578, 580 (1948).

[4] "... [I]f the Lessee shall neglect or fail to perform or observe any of the covenants contained in these presents...for a period of seven

upon continuation of whatever default prompted it "for a period of seven (7) days after written notice from the Lessor to the Lessee specifying such default." The purpose of that clause was to afford the lessee an opportunity to remove the default and thereby avoid termination due to the default. Compare *Milona Corp.* v. *Piece O'Pizza of America Corp.* 1 Mass. App. Ct. 839 (1973). Contrast *New England Structures, Inc.* v. *Loranger,* 354 Mass. 62, 67-69 (1968). There was no evidence to warrant a finding of compliance with the notice requirement or excuse from such compliance, as to which the plaintiffs had the burden of proof. See *Waldo Bros. Co.* v. *Platt Contracting Co. Inc.* 305 Mass. 349, 359 (1940). The plaintiffs' reliance on statements to the contrary allegedly contained in the defendant's bill of exceptions, which was duly presented on June 26, 1974, but never allowed (and which does not even appear in the appendix), is misplaced for the reason stated in *McElaney* v. *Hubby,* 3 Mass. App. Ct. 717 (1975). Consequently the indemnification clause must be treated as inoperative.

Apart from such a clause, the plaintiffs have no right to recover rent for any period subsequent to the termination of the lease. *Sutton* v. *Goodman,* 194 Mass. 389, 394-395 (1907). *Taylan Realty Co. Inc.* v. *Student Book Exchange, Inc.* 354 Mass. 777, 778 (1968). The judge's ruling to the contrary, implicit in his denial of Sharaf's sixth requested ruling[5] (which is not entirely clear but which we interpret as requesting a ruling that no additional lia-

---

(7) days after written notice from the Lessor to the Lessee specifying such default . . . the Lessor lawfully may . . . enter . . . the said premises . . . and repossess the same . . . and expel the Lessee . . . and upon entry as aforesaid this lease shall determine; and the Lessee covenants that in case of *such* termination it will indemnify the Lessor against all loss of rent . . . which he may incur by reason of *such* termination during the residue . . . of the said term" (emphasis supplied).

[5] "Priestley had the option of either requiring Sharaf's to name an arbitrator or to evict Sharaf's, and, in so doing, terminating the lease. Having elected the latter, no *further* obligations existed under the lease" (emphasis supplied).

bility for lost rentals could accrue after termination of the lease) was error.

It does not follow, however, that the plaintiffs forfeited any right to damages which accrued before termination. See *Factory Realty Corp.* v. *Corbin-Holmes Shoe Co.* 312 Mass. 325, 329-331 (1942). Neither the bank's acceptance of half a dozen $615 rent checks in the early months of the extended term, nor the bank's October 1, 1965, letter asking for the 1965 tax escalation payment, nor the bank's delay in presenting a written claim for an increased rent until October 25, 1965, required the judge to find either an implied agreement that the rent remain unchanged or a waiver by the bank of its right to claim an increased rental. To the contrary, Sharaf's, through a representative, engaged in negotiations with the plaintiffs concerning the new rent in September, 1965, and, so far as appears, did not advance its theory of implied agreement or waiver until its letter of October 15, 1965. Compare *MacDonald & Payne Mach. Co. Inc.* v. *Metallic Arts of New England, Inc.* 324 Mass. 353, 357 (1949). There is no suggestion that Sharaf's was in any way prejudiced by the delay. Contrast *Weinreb* v. *Clarke,* 361 Mass. 883 (1972). When Sharaf's exercised its option to extend the lease term, it undertook the obligation to pay whatever rent should be determined in lieu of agreement, effective May 1, 1965; when that determination took place could not materially affect the nature or scope of its undertaking. And assuming, as Sharaf's argues, that the words in the extension clause, that the new rent was to be "at a rate *then* agreed upon" (emphasis supplied), contemplated agreement between the time of exercise of the option and the commencement of the extended term, it was still open to the judge to find that the parties by their conduct had extended the time for such agreement. *MacDonald & Payne Mach. Co. Inc.* v. *Metallic Arts of New England, Inc., supra.* It follows that Sharaf's third, fourth and fifth requests for rulings, asserting that as matter of law there was an implied agreement, waiver or estoppel, were properly denied. For the same reason, the denial of Sharaf's first requested ruling,

that the evidence did not warrant a recovery for the plaintiffs, was correct.

The defendant's further contention that the judge's assessment of damages was in derogation of the arbitration provision of paragraph 10 is without merit, because the judge could have found a waiver of that provision by the defendant as matter of fact (if, indeed, there was not a waiver as matter of law). *Fall River* v. *Aetna Ins. Co.* 219 Mass. 454, 458 (1914). Furthermore, the defendant failed to raise that issue before the trial court by requests for rulings or otherwise. *Sikora* v. *Hogan,* 315 Mass. 66, 71 (1943). The defendant's remaining contention, relating to the rent which would have been payable before the plaintiffs acquired the premises in December, 1965 (see *Burden* v. *Thayer,* 3 Met. 76, 77-81 [1841]; *Winnisimmet Trust, Inc.* v. *Libby,* 232 Mass. 491, 492 [1919]), need not be considered for the same reason.

The findings for the plaintiffs on counts one and two are to be modified, following such further proceedings as may be necessary, so that damages shall be based on the fair rental value of the premises from May 1, 1965, until the date (which we cannot ascertain on this record) that Sharaf's vacated the premises (see *Sutton* v. *Goodman,* 194 Mass. at 395), and judgment is to enter for the plaintiffs on the findings as so modified.

*So ordered.*