In re JOHN J. SULLIVAN, INC., Debtor.

**SENTRY INSURANCE, a Mutual Company, Appellant,**

v.

**JOHN J. SULLIVAN, INC., Appellee.**

Civ. A. No. 89–1315–T.

United States District Court, D. Massachusetts.

June 11, 1990.

---

5. 26 U.S.C. § 6323(f)(1)(B).

Daniel J. Carragher, Day, Berry & Howard, Boston, Mass., for plaintiff.

Paul D. Moore, Michael Dean Gaffney, Foley, Hoag & Eliot, Boston, Mass., for defendant.

TAURO, District Judge.

This is an appeal from the bankruptcy court's decision to extend appellee's insurance coverage.

Appellant, Sentry Insurance ("Sentry"), issued certain insurance policies to the appellee, John J. Sullivan, Inc. ("Sullivan").[1] On March 7, 1989, Sentry mailed a notice of cancellation, as of March 17, 1989, for non-payment of premiums on all three policies.

Sullivan received the notice on March 13, 1989. Two days later, Sullivan filed a voluntary petition for Chapter 11 bankruptcy. On April 10, 1989, the bankruptcy court allowed Sullivan's emergency motion for an order directing Sentry to continue honoring the policies. The court based its decision on the extension provision of 11 U.S.C. § 108(b).[2] *See Bankruptcy Court Order on Debtor's Emergency Motion, April 10, 1989.*[3]

Sentry filed a motion for relief from the order and a response to Sullivan's emergency motion on April 14, 1989. The court held a hearing on April 25, 1989 where Sentry argued that the court should reconsider the motion on the merits, partly because counsel had been absent despite diligent efforts to obtain a continuance. The court upheld its order "[f]or due cause and not because Sentry failed to appear ...," *see Bankruptcy Court Order on Sentry Insurance's Motion for Relief From Order, April 27, 1989.* Sentry's arguments in opposition to Sullivan's emergency motion were not discussed in the order.

At issue now is Sentry's notice of appeal from the April 10 and April 27 orders.

### I.

The issue presented is whether the bankruptcy court erred in ruling that 11 U.S.C.

---

1. The policies at issue are Sentry's Package Plan Policy, Umbrella Liability Policy, and Workers' Compensation Policy.

2. Section 108(b) provides, in pertinent part, that:
   ... if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case might be, before the later of—
   (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and [sic]
   (2) 60 days after the order for relief.

3. Sentry failed to appear at the hearing on Sullivan's emergency motion, but the court purported to base its decision on the merits. *See id.*

§ 108(b) extended for sixty days the three insurance policies. The district court, in reviewing the bankruptcy court's decision, is to apply a clearly erroneous standard to findings of fact and a *de novo* review to conclusions of law. *See In re Daniels-Head & Assoc.*, 819 F.2d 914 (9th Cir.1987).

## II.

Sentry argues that § 108(b) does not extend the period of insurance coverage, because none of the policies contains a grace period, although the Plan Package Policy does have a cure provision. Sentry avers generally that coverage with respect to all three policies expired on the cancellation date, and that § 108(b) cannot create additional coverage not provided for by contract, agreement, or statute. *See In re Econo-Therm Energy Systems Corp.*, 80 B.R. 137, 140 (Bankr.D.Minn.1987) (§ 108(b) does not by itself extend the insurance coverage).

Sentry makes this argument in an attempt to distinguish its situation from the facts in *Counties Contracting and Construction Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054 (3rd Cir.1988), and *Econo-Therm*, 80 B.R. 137. In those cases, the courts found that § 108(b), in conjunction with policy terms and state law, mandated insurance coverage during the entire sixty-day extension. Sentry offers three arguments to distinguish itself from *Counties Contracting* and *Econo-Therm:* 1) unlike the subject policies in those cases, there is no state law here creating a grace period that requires insurers to continue coverage after the policy would otherwise expire; 2) the Workers' Compensation and Umbrella policies contain no provision allowing the debtor to cure defaults; and 3) the Plan Package Policy has a cure provision, but no grace period.

Sentry's argument is similar to that advanced by Prudential Insurance as *amicus,* but rejected by the court in *Counties Contracting:*

> Prudential urges that the right extended by § 108 is only the right to pay delinquent premiums until 60 days after the petition is filed. It does not, argues Prudential, compel an insurer to pay claims that accrued after the contractual grace period when the debtor elected not to cure the delinquent premium payment within the extension period provided by § 108(b). In effect, Prudential is claiming that although § 108(b) gives the debtor the right to make a delinquent payment for an additional amount of time, coverage is limited to the contractual grace period of 31 days. We find the argument of Prudential too restrictive a reading of § 108(b).

*Counties Contracting,* 855 F.2d at 1057 n. 4. The court there found that the purpose of the contractual grace period was to allow Counties time to act so as to maintain the policy, rather than merely to afford an opportunity to remedy cancellation. *See id.* "Therefore, under § 108(b), coverage and entitlement to proceeds continue during the entire 60-day extension." *Id.*

Sullivan cites Professor Corbin for the proposition that, if a period of notice is required, a contract remains in effect during the specified period after receipt of the notice of termination. *See* Corbin, 6 *Corbin on Contracts* § 1266 at p. 66 (1962). But, that argument misses Sentry's point which is that, even given the cure provision in the Package Plan Policy, § 108(b) cannot extend the coverage beyond the cancellation date because there is no statutory or contractual provision for coverage during the cure period. The Package Plan Policy cancellation provision provides:

> Where the stated reason is nonpayment of premium ... this policy may be cancelled at any time by giving to the insured a ten days written notice of cancellation ... the insured may continue coverage and avoid the effect of the cancellation by payment at any time prior to the effective date of cancellation.

*Sentry Plan Package Policy.* The opportunity to cure, therefore, expires on the effective date of cancellation. Moreover, the clear import of the provision is that Sullivan had ten days after notice to cure the default. During that ten-day period, Sullivan would continue to have the benefit

of coverage, because the policy would not yet have been effectively cancelled.

In *Counties Contracting*, the court found that the cure provision not only extended the time to cure default, but also allowed the policy holder to act so as to continue the policy. The court held that this opportunity to act fell within the "perform other similar acts" language of § 108(b). 855 F.2d at 1057 n. 4. Here, the nexus between the cancellation date and the expiration of the cure period permits an act that would continue the policy uninterrupted. This court agrees with the reasoning of *Counties Contracting* to the effect that § 108(b) extends the policy coverage, along with the Plan Package Policy's cure period, for the sixty-day statutory period. *See id.*

■ The more complex issue is whether § 108(b) acts to extend the coverage of the other two policies. Sentry argues that, even if § 108(b) automatically extends the Plan Policy's coverage along with its cure period, the bankruptcy court order is still in error as to the Workers' Compensation and Umbrella policies. Sentry argues that these policies contain no cure provisions and, therefore, Sullivan had no right to act so as to continue their coverage.

Indeed, these policies do not provide a right to perform curative acts after default. Because there is no contractual right to cure, therefore, § 108(b) cannot extend coverage of the two other policies, unless such a right is afforded by statute. *See Econo–Therm*, 80 B.R. 137, 140 (Section 108(b) may extend contractual or statutory grace period, and whether coverage is extended is dependent on language of contract or statute).

Sullivan argues, however, that a right to cure exists under the Notice of Insurance Cancellation and under Massachusetts law. Sullivan asserts that, because Sentry's notice stated that the policies were being cancelled for "non-payment of premium," and informed Sullivan of the "$100,058.76 payment requested on the last invoice," the compelling inference is that there was an implied right to cure. *See Notice of Cancellation.*

Sentry denies any implied right to cure. This court agrees. The language of the Notice of Cancellation, rather than supporting an implied right to cure, appears to simply state the reason for cancellation.

Moreover, the language of the Notice of Cancellation does not amount to an offer to provide an opportunity to cure. *See Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp.*, 445 F.Supp. 537, 545 (D.Mass. 1977) (Julian, J.) (citations omitted).

Sentry does concede, however, that there was an implied offer to permit Sullivan to rescind the cancellation, and that § 108(b) extended this offer for sixty days. Sentry argues, however, that the recission offer was not accepted by Sullivan and, therefore, no agreement was ever formed.

As has been noted above, the Notice of Cancellation does not constitute such a precisely delineated writing that it could be construed as a legally binding "offer." *See A. Boilard Sons, Inc. v. Solitario*, 1980 Mass.App.Div. 193 (1980) (trilogy of flyers insufficient to create binding offer). The scope of the offer, therefore, must be determined from Sentry's concession. In an April 4, 1989 letter, Sentry's counsel wrote:

> Although the policy coverage terminated on March 17, Sentry acknowledges that the notice of cancellation also contained an offer to rescind, conditioned upon Sullivan, Inc. paying the full amount due by March 17. In our conversation, I agreed that 11 U.S.C. § 108(b) extended Sullivan, Inc.'s period for performance until May 14, 1989.

*Sentry Letter April 4, 1989.* The Sentry letter does constitute an offer to rescind, conditioned on full payment by Sullivan. *See Gilbert*, 445 F.Supp. at 545. But, section 108(b) cannot extend coverage on the basis of that mere offer, because the Sentry letter which constitutes the offer does not provide for coverage during the rescission period.

Sullivan cites *Milona Corp. v. Piece O' Pizza of America Corp.*, 1 Mass.App.Ct. 839, 300 N.E.2d 926 (1973), for the proposition that the mere fact that ten days notice

was required on the two policies, and thirty days notice on the third, is sufficient under Massachusetts law to establish a right to cure. In *Piece O' Pizza,* the court held that failure to give notice was more than a mere technical failure, because the cancellation provision there gave the plaintiff an opportunity to cure a default. 1 Mass. App.Ct. at 840, 300 N.E.2d at 927 (citing Corbin, *supra* § 1266; *New England Structures v. Loranger,* 354 Mass. 62, 67–69, 234 N.E.2d 888, 892, 893 (1968)).

In *New England Structures,* the court found that whether a five-day notice period was intended to give an opportunity to cure was a legal issue to be determined by the court on examination of the cancellation provisions. 354 Mass. at 68, 234 N.E.2d at 892, 893.[4] Failure to express an intention in a contractual provision cannot be remedied by conjecture. But if an instrument as a whole produces a sufficient conviction that there is an underlying intention that was not expressly stated, that intention may be recognized. *See Spaulding v. Morse,* 322 Mass. 149, 152, 153, 76 N.E.2d 137, 139 (1947) (citations omitted).

In *New England Structures* the court found that nothing in the subject provision suggested that termination was not to be effective at the conclusion of the notification period, even if New England changed its conduct. 354 Mass. at 68, 234 N.E.2d at 893. Similarly, nothing in the subject provisions here suggests that Sullivan could perform curative acts to prevent cancellation. In fact, Sentry may apparently cancel for any reason.[5] *See contra Priestley v. Sharaf's Inc.,* 4 Mass.App. 218, 221, 222, 344 N.E.2d 905, 908 (1976) (finding lease provision which conditioned termination on continuation of whatever prompted default

as more like *Piece O' Pizza* than *New England Structures* ). Furthermore, this Circuit has read *New England Structures* to prevent courts from implying contract terms, absent clear manifestation by the parties. *See Quaker State Oil Refining v. Garrity Oil Co.,* 884 F.2d 1510, 1515 (1st Cir.1989); *Mathewson Corp. v. Allied Marine Industries, Inc.,* 827 F.2d 850, 854 (1st Cir.1987).

■ This court concludes, therefore, that the cancellation provisions of the subject policies do not clearly indicate that the parties intended the notification period also to be a cure period.[6] Massachusetts law, therefore, does not provide a right, express or implied, to cure under the provisions of the policy.

### III.

■ Sullivan also claims that proper notice was not given for cancellation of the Umbrella Policy, because that policy requires a thirty-day written notice of termination. Sentry's Notice of Cancellation purported to give only ten days notice. Sullivan argues that strict compliance with the contractual termination provision is required, and cites Corbin for support:

> If a party who has power of termination by notice fails to give the notice in the form and the time required by his reservation, it is ineffective as a termination.

Corbin, *supra* § 1266 at p. 64. Sullivan further cites *Michelson v. Franklin Fire Ins. Co.,* 252 Mass. 336, 147 N.E. 851 (1925), for the proposition that this principle applies with particular force to insurance policies.

In *Michelson,* the insured was not served with a notice of cancellation, and the court found that there was a question of fact as

---

**4.** *See* footnote 6, *infra,* for pertinent policy language.

**5.** The Workers' Compensation Policy provides, in pertinent part:

"D(2) We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect....

(3) The policy period will end on the day and the hour stated in the cancelation notice." The Umbrella Policy provides, in pertinent part:

J. Cancellation. This policy may be canceled by us by mailing to the named insured at the address shown in this policy written notice stating when not less than 30 days thereafter the cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period ...

**6.** *See* footnote 5, *supra,* for the pertinent policy language.

to whether Michelson had authorized his agent to waive the requirement of the notice. 252 Mass. at 341, 147 N.E. at 853. Here, the appellee was given notice which, although it misstated the date of cancellation, also stated:

> Please take notice that the above numbered policies will be cancelled for nonpayment of premium in accordance with the cancellation condition of the policy.

The policy states that the notice period shall not be less than thirty days. *See Umbrella Policy, supra,* note 5.

Arguably, by referring to the cancellation provisions of the policies, Sentry provided sufficient constructive notice that the Umbrella Policy would expire thirty days after the date of notice. Although the Supreme Judicial Court has not addressed this issue, an analogous principle lends some support to the constructive notice proposition:

> It is settled that the party to a transaction, whose rights are liable to be injuriously affected by notice, cannot willfully shut his eyes to the means of acquiring knowledge which he knows are at hand and thus escape the consequences which would flow from the notice had it been actually received.

*Conte v. School Committee of Methuen,* 4 Mass.App. 600, 605, 356 N.E.2d 261, 265 (1975) (and cases cited therein). *See also Commonwealth v. Olivo,* 369 Mass. 62, 70, 337 N.E.2d 904, 909 (1975) (notice to nonenglish speaker sufficient to put reasonable person on notice that further inquiry was required).

■ But even if Sullivan's conduct amounted to avoidance, Sentry may not rely on a notice that was statutorily invalid. *See Liberty Mut. Ins. Co. v. Wolfe,* 7 Mass. App. 263, 265, 386 N.E.2d 1303, 1304 (1978) (restricting the scope of *Conte* and *Olivo* when a notice statute is involved). In the context of cancellation of insurance policies, Sentry must strictly comply with conditions imposed by law. *Id.* (stating the general maxim). *See also Strong v. Merchants Mut. Ins. Co.,* 2 Mass.App. 142, 148, 149, 309 N.E.2d 510, 513, 514 (compliance with law and provision of policy requiring that notice of cancellation state that excess premium will be refunded on demand is essential) (1974), *modified in another respect,* 366 Mass. 751, 322 N.E.2d 765 (1975), *Id.,* 5 Mass.App. 870, 367 N.E.2d 1183 (1977); *Fields v. Parsons,* 353 Mass. 706, 707, 234 N.E.2d 744, 745 (1968) (statute requiring cancellation notice to be specific not complied with when notice omitted details of "misstatements" discovered); *White v. Edwards,* 352 Mass. 655, 657, 227 N.E.2d 354, 356 (1967) (statute requiring notice to state specific reasons for cancellation protects both insured and insurer, even though insurer has no rights to prevent cancellation); *Gulesian v. Senibaldi,* 289 Mass. 384, 387, 194 N.E. 119, 120 (1935) (notice which misspelled insured's name and omitted registration number of vehicle insufficient under statute); *Fromer v. John Street Service Center,* 34 A.D.2d 1081, 312 N.Y.S.2d 490 (1970) (workers' compensation policy may only be cancelled by notice in strict conformity with statute).

These cases concern statutes regulating policies other than the types at issue here. But, Mass.Gen.L.Ann. ch. 175, § 187C (West 1987) requires that "[a] company issuing any policy of insurance which is subject to cancellation by the company shall effect cancellation by serving the notice thereof provided by the policy ..." Here, the policy requires at least thirty-days notice and states that the effective date of cancellation stated in the notice shall end the policy period. The notice requirements of the Umbrella Policy were not met. The cancellation notice, therefore, was invalid. The policy remains in effect until thirty days after proper notice is given.

An order will issue.

## ORDER

For the reasons stated in the accompanying memorandum, the April 10, 1989 and April 27, 1989 orders of the bankruptcy court are affirmed in part and reversed in part, as follows:

1) The bankruptcy court's extension of coverage and a right to cure under the Package Plan Policy for a period of sixty

days from the date of cancellation, pursuant to 11 U.S.C. § 108(b), is affirmed.

2) The bankruptcy court's decision to apply the § 108(b) extension to the Worker's Compensation and Umbrella policies is reversed.

3) The Notice of Cancellation, coupled with the April 4 Sentry letter, created an offer to rescind cancellation which § 108(b) extended for sixty days, but which did not extend coverage.

4) Notice of cancellation for the Umbrella Policy did not comply with Massachusetts law. The policy, therefore, remains in effect until thirty days after proper notice has been given.

It is so ordered.