WILLIAM RITSON & another *vs.* ATLAS ASSURANCE COMPANY, LIMITED.

Middlesex.    February 4, 5, 1932. — May 26, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Equity Jurisdiction*, Mistake, Reformation of contract. *Broker*, Insurance. *Agency*, Scope of authority. *Insurance*, Broker, Reformation of policy, Fire. *Estoppel*. *Equity Pleading and Practice*, Master: findings.

A master, who heard a suit in equity by two tenants in common of a dwelling house against an insurance company to reform, on the ground of mutual mistake, a policy of insurance against fire issued by the defendant to one of them only, found the following facts in substance: Previous to March 1, a duly licensed insurance broker, who had dealt with the plaintiffs before, approached them and solicited fire insurance. He knew that they owned the premises as tenants in common, that they kept their funds in a joint bank account, and that they intended that the policy should be issued in the names of both of them and should cover the interest of both in the premises in question, and he also so intended. He gave the order for the insurance to an agent for the defendant. The order slip and the policy issued omitted the name of one of the plaintiffs. The policy, which bore date March 1, was delivered to the soliciting broker, who delivered it to the plaintiff named therein as the insured. In the following July, the soliciting broker became an authorized, licensed agent of the defendant to solicit insurance for it, after which he had no dealings with the plaintiffs, and never acted for the defendant in any transaction to which his information respecting the plaintiffs was material. The premises were burned the following February. The master further found that both parties to the contract intended that the policy should insure a full interest in the property; that the omission of the name of one of the plaintiffs was due to negligence of the soliciting broker, and that, if the name of the omitted plaintiff had been mentioned to the defendant's agent, a policy would have been issued to both plaintiffs. He stated that he did not find that the issuance of the policy to one plaintiff only was the result of a mutual mistake of the parties. The evidence was not reported. A final decree dismissing the bill was entered. *Held*, that
(1) As the evidence was not reported, the facts found by the master must stand unless mutually inconsistent and plainly wrong;

(2) The finding, that the soliciting broker neglected to give to the defendant's agent the name of the plaintiff whose name was omitted as an insured, was not inconsistent with the other findings or plainly wrong;

(3) The finding that the parties intended that the policy should insure a full interest in the property, if properly interpreted, meant that both parties understood that the whole property described in the policy should be insured, but that the defendant understood that the title to the entire property was vested in the named insured; and there was no merit in an exception by the defendant to such finding;

(4) While both parties made mistakes in the transaction, their mistakes did not relate to the same matter: the plaintiffs intended that they both should be insured and understood that they were so insured, while the defendant intended to insure only the named insured and did so; the fact that it believed him to be the sole owner of the property was due to the fault of the plaintiffs' agent, the soliciting broker;

(5) G. L. c. 175, § 169, did not require that the knowledge which the soliciting broker had respecting the intent and understanding of the plaintiffs be attributed to the defendant; the fact that, after the policy was issued, he became an agent for the defendant, was immaterial;

(6) The knowledge possessed by the soliciting broker did not estop the defendant from denying the existence of a mutual mistake.

(7) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on July 31, 1930.

The suit was referred to a master. Material facts found by the master, and exceptions to his report are described in the opinion. The suit was heard by *Broadhurst*, J., by whose order there were entered an interlocutory decree, overruling the plaintiffs' and sustaining the defendant's exceptions to the report and confirming the report as so modified, and a final decree dismissing the bill. The plaintiffs appealed from both decrees.

*P. B. Buzzell*, for the plaintiffs.

*H. W. Cole*, for the defendant.

CROSBY, J. This is a suit in equity in which the plaintiffs seek to have reformed on the grounds of mutual mistake and estoppel, a certain policy of fire insurance, issued by the defendant in the name of William Ritson, under date of March 1, 1926, by the insertion therein of the name of Thomas W. Ritson as one of the persons insured under said policy.

The case was referred to a master who made the following findings of fact: The plaintiffs are tenants in common of the premises described in the policy. On February 2, 1927, there was a fire whereby the dwelling house on the premises described in the policy was damaged by fire. An action at law on the policy was brought in the names of both plaintiffs; on an appeal to this court a rescript was issued as follows: "Plaintiff William Ritson is given leave to amend by striking out the name of Thomas W. Ritson. If this is done within thirty days from the date of the rescript, the order dismissing the report is to be reversed and a new trial ordered limited to the question of damages. If the amendment is not made, the order dismissing the report is to be reversed and judgment entered for the defendant." (272 Mass. 73.) Prior to March 1, 1926, one Messenger approached the plaintiffs and solicited fire insurance covering the premises in question. Messenger had known the plaintiffs for some time and had sold them other insurance. He was a duly licensed insurance broker and after receiving the order from the plaintiffs "had the right to broker the insurance with any company capable of writing . . . [it]." He knew that the plaintiffs owned the premises as tenants in common, that they kept their funds in a joint bank account, and that they intended the policy should be issued in the names of both plaintiffs, and should cover the interest of both in the premises in question. He also intended that the policy should be so issued. Messenger gave the order for insurance to one Kingman, president of the L. W. Kingman Company, which was an authorized agent of the defendant. Both the order slip and the policy, which bore date March 1, 1926, omitted the name of Thomas W. Ritson, and contained only the name of William Ritson as the insured. The policy was delivered in hand or mailed to Messenger who sent to the insured a bill for $208, the full amount of the premium, which was paid to Messenger. The latter knew at the time of the payment that it was from the joint funds of the plaintiffs. Later, the policy was turned over by Messenger to William Ritson, who never examined it, nor became aware that it did

not contain the names of both plaintiffs until after a fire occurred.

The master further found that both parties to the contract intended that the policy should insure a full interest in the property, but that the defendant at no time before the loss had any knowledge that Thomas had any interest in the property except in so far as knowledge on the part of Messenger might be deemed knowledge on the part of the defendant, and except in so far as may be inferred as matter of law from the facts found; that if the name of Thomas W. Ritson had been mentioned to the Kingman company a policy would have been issued in both names. He states that "Although some evidence was introduced tending to show that the home office of the respondent company might have rejected the risk and might later have cancelled the policy prior to the loss, there is no evidence justifying such a finding and I do not find that the risk would have been rejected, or the policy later cancelled if the name of Thomas William Ritson had been transmitted to the home office of the respondent company as coinsured with the complainant William Ritson." On July 24, 1926, Messenger was duly appointed and licensed as an agent of the defendant company. He continued to have the same knowledge with respect to the ownership of the property by both plaintiffs, and of their intention to have the policy issued in the names of both, which he had when it was issued. His agency, however, was one to solicit insurance for the defendant.

The master's report contains among others the following recitals: (1) "I do not find that the policy in suit was issued in the name of William Ritson alone as a result of a mutual mistake, but was so issued solely on account of the error or inadvertence on the part of the broker Messenger," and (2) "there can be but one conclusion, and that is that Messenger neglected to give the name of the complainant Thomas W. Ritson to Kingman at the time he placed the order for the policy and I so find." The plaintiffs objected to both these findings "on the ground that said conclusion[s] . . . [are] inconsistent with and . . . [are] not

supported by the subsidiary and other findings contained in the report." The defendant objected to the following findings of the master: (1) "There is no question that the parties intended that the policy should insure a full interest in the property"; (2) "There is no doubt that if the name of Thomas William Ritson was mentioned to the Kingman company that a policy would have been issued in both names"; (3) "Although some evidence was introduced tending to show that the home office of the respondent company might have rejected the risk and might later have cancelled the policy prior to the loss, there is no evidence justifying such a finding and I do not find that the risk would have been rejected, or the policy later cancelled if the name of Thomas William Ritson had been transmitted to the home office of the respondent company as coinsured with the complainant William Ritson." An interlocutory decree was entered overruling the plaintiffs' exceptions, and sustaining the defendant's exceptions; as so modified the report was confirmed. A final decree was entered dismissing the bill with costs. The plaintiffs appealed from both decrees.

As the evidence is not reported the facts found by the master must stand unless mutually inconsistent and plainly wrong. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. *L. E. Fosgate Co.* v. *Boston Market Terminal Co.* 275 Mass. 99. The finding that Messenger neglected to give the name of Thomas W. Ritson as an insured is not inconsistent with the other findings or plainly wrong. It does not appear that all the subsidiary facts upon which this finding is based are contained in the report. Even if it be inferred that all the facts appear in the master's report, giving this court power to draw inferences under the rule stated in *Nichols* v. *Atherton*, 250 Mass. 215, and cases cited at page 217, and in *Anagnosti* v. *Almy*, 252 Mass. 492, 500–501, it is manifest that Messenger failed to give Thomas W. Ritson's name to the defendant's agent. The finding that the parties intended the policy should insure a full interest in the property, if properly interpreted, was a rational and correct inference. This finding means that

both parties understood that the whole property described in the rider attached to the policy should be insured, but that the defendant understood that the title to the entire property was vested in William Ritson. No other reasonable conclusion is possible. Nowhere in the policy does it appear that only one undivided one-half interest was intended to be insured. It does not appear anywhere in the record that the insurance company had any knowledge that William Ritson owned less, than a full interest in the property, unless the knowledge of Messenger is chargeable to it. It follows that the defendant's objection to this finding of the master should have been overruled.

It does not follow, however, that the plaintiffs are entitled to the relief sought. Although there was a mistake on the part of both parties to the contract it was not a mutual mistake which will furnish a ground for reformation of the contract. It was said in *Barrell* v. *Britton*, 252 Mass. 504, at page 508: "A court of equity is without power to reform a written agreement between parties, except to conform it to the facts of the agreement where those facts by mutual mistake are not made to appear, or where by fraud one has been induced to enter into a contract he never intended to make. There is no allegation or claim of fraud in the present case. It is well settled that to entitle a party to a contract to have it reformed on the ground of a mistake, it must appear that the mistake was mutual. Proof of mistake by one of the parties only is not sufficient. The mistake must be by both and in reference to the same matter. If one of the parties understood the agreement to be substantially as written, the other party will not be entitled to relief on the ground of mistake"; and in *Page* v. *Higgins*, 150 Mass. 27, at page 30: "The usual remedy, when, by accident or mutual mistake, a written contract does not express the actual contract of the parties, is by a reformation or rectification of the writing, and this is a remedy for any party to the written contract, unless the statute of frauds prevents. The remedy when the written contract does not express the understanding of the parties on account of a mistake

concerning the subject matter of it, is by a rescission or cancellation of the written contract . . . ." *Richardson* v. *Adams*, 171 Mass. 447, 449. *Crowley* v. *Holdsworth*, 264 Mass. 303, 308. It is to be observed that while in the case at bar both parties were mistaken the mistakes did not relate to the same matter. The plaintiffs understood and intended that they both were insured, while the defendant had no such understanding or intention. The company intended to insure William Ritson, and the fact that it believed him to be the sole owner of the property was due to the fault of the plaintiffs' agent, Messenger. Whether or not the plaintiffs have a remedy by cancellation of the policy or return of the premium is not material in the present case. As it is apparent that there was no mutual mistake, to give the plaintiff the relief sought would be to make the defendant liable upon a contract to which it was not bound, and the great injustice might be done of imposing upon it the consequences of a contract to which it had never assented, and therefore was wholly against its will. See *Page* v. *Higgins*, 150 Mass. 27, 30, 31.

It is the contention of the plaintiffs that the knowledge which the broker, Messenger, had respecting the intent and understanding of the plaintiffs is to be attributable to the defendant, under G. L. c. 175, § 169, which reads as follows: "An insurance agent or broker acting for a person other than himself in negotiating, continuing or renewing any policy of insurance or any annuity or pure endowment contract shall, for the purpose of receiving any premium therefor, be held to be the agent of the company, whatever conditions or stipulations may be inserted in the policy or contract." The plaintiffs contend that since Messenger received the premium with knowledge that it was paid from the joint funds of both plaintiffs, and that they both believed they were insured, such knowledge is chargeable to the defendant and for this reason it is estopped to deny that there was a mutual mistake. This statute was originally enacted by St. 1878, c. 166, § 1, and has remained substantially in its present form. Pub. Sts. c. 119, § 194. St. 1887, c. 214, § 90. St. 1894, c. 522,

§ 90. R. L. c. 118, § 91. St. 1907, c. 576, §§ 96, 122. Its construction does not appear to have been expressly passed upon by this court, with reference to the question here presented, although it was said in *Michelson* v. *Franklin Fire Ins. Co. of Philadelphia*, 252 Mass. 336, at page 339, "Being a broker, he was by G. L. c. 175, § 169, agent of the defendant for the purpose of receiving the premiums on the policies. He therefore occupied a dual relation, owing a duty to both parties." However, the language is not ambiguous or of doubtful meaning. It seems plain that by its true interpretation it makes the payment of a premium to a broker payment to the company no matter what condition or stipulation may be contained in the contract or policy to the contrary. It creates an exception to the general rule that a broker is the agent of the assured, and not of the insurer, *Commonwealth Mutual Fire Ins. Co.* v. *William Knabe & Co. Manuf. Co.* 171 Mass. 265, and should not be construed as affecting in any other respect the rights and obligations of the parties. It would be an unwarranted construction of the contract of insurance to hold that, because the broker is made by the statute the agent of the insurer for a single purpose, the insurer should be liable for knowledge which the broker acquired while acting as agent for the assured in soliciting and procuring the insurance. As the plaintiffs paid the broker the premium and it was received by the defendant, the statute has no application to any other issue involved.

It is the further contention of the plaintiffs that the knowledge which Messenger had with respect to the ownership of the property by both plaintiffs and their intention to have the policy issued in both names, which he had at the time the policy was issued and when the premium was paid, is properly chargeable to the defendant, and that it is estopped to deny that there was a mutual mistake. It is specifically found by the master, however, that the agency of Messenger was merely to solicit insurance for the defendant. After his appointment as agent of the defendant he had no dealings whatever with the plaintiffs, and never acted for the defendant in any transaction to

which the information was material. Whatever his apparent authority when dealing with others, in his dealing with the defendant he was a special agent for the soliciting of insurance only, and any knowledge which he possessed concerning a transaction which was closed before he was appointed an agent, and with which he had nothing to do after his appointment, is not chargeable to his principal. The mere fact that he was appointed by the defendant to solicit insurance after this policy was issued cannot affect a valid contract with William Ritson and change it into a contract with both plaintiffs. *Thomas* v. *Commercial Union Assurance Co. Ltd.* 162 Mass. 29. There is nothing in *New England Trust Co.* v. *Bright,* 274 Mass. 407, 412, inconsistent with this conclusion.

There was no mutual mistake in connection with the policy in question which entitled the plaintiffs to reformation in equity. The interlocutory decree is to be modified by overruling the defendant's first exception to the master's report. The interlocutory decree as so modified and the final decree dismissing the bill with costs are affirmed.

*Ordered accordingly.*