ROOSEVELT HUDSON vs. MASSACHUSETTS PROPERTY
INSURANCE UNDERWRITING ASSOCIATION.

Suffolk. February 5, 1982. — June 4, 1982.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & O'CONNOR, JJ.

*Massachusetts Property Insurance Underwriting Association. Broker,*
Insurance. *Agency,* Scope of authority. *Insurance,* Homeowners,
Broker.

General Laws c. 175C, § 3, did not give an insurance broker express
    authority to act as the agent of the Massachusetts Property Insurance
    Underwriting Association, and consequently the association was not
    bound by the broker's representation to a prospective insured as to the
    effective date of a policy of insurance. [454-456]
General Laws c. 175, § 169, providing that an insurance broker is an
    insurance company's agent for the purpose of receiving certain premi-
    ums, did not make an insurance broker the agent of the Massachusetts
    Property Insurance Underwriting Association with authority to bind
    the association by its representations to a prospective insured as to the
    effective date of a policy of insurance. [456-457]
An insurance broker which obtained insurance issued through the Mas-
    sachusetts Property Insurance Underwriting Association for a cus-
    tomer had, in the circumstances, no apparent authority to act on
    behalf of the association, and the association thus was not estopped to
    deny that the broker was its agent at the time representations were
    made to the customer as to the effective date of the insurance policy.
    [457-458]
An insurance policy issued through the Massachusetts Property Insurance
    Underwriting Association, but obtained with the services of an in-
    surance broker, took effect pursuant to G. L. c. 175, § 169, and
    c. 175C, § 2 (3) (c), on the date the association received the premium
    from the broker, and not on the date the insured had made payment to
    the broker. [458-459]

CIVIL ACTION commenced in the Municipal Court of the
Dorchester District on January 25, 1978.
The case was heard by *Tucker,* J.

*Emidio DiLoreto* (*Elizabeth A. DiLoreto* with him) for the plaintiff.

*Acheson H. Callaghan, Jr.*, for the defendant.

ABRAMS, J. The plaintiff appeals from a determination of the Appellate Division of the District Courts on a report from a District court judge that a policy issued by the defendant, Massachusetts Property Insurance Underwriting Association (MPIUA), took effect on October 12, 1976, and that the broker selected by the plaintiff was not an agent of the defendant. We conclude that the order dismissing the report should be affirmed.

We summarize the facts. On September 2, 1976, the plaintiff, Roosevelt Hudson, applied for homeowners insurance from Frederick Cross, doing business as United Real Estate and Insurance Agency, acting on behalf of Bay Colony Insurance Agency, Inc. The plaintiff paid $40 of the $65 premium to Cross. The plaintiff also signed a financing statement from Allston Finance Co., Inc., for the balance of the premium. This financing statement included information identifying the insurance company as "Mass. Property" and the policy number as H-69046. Later, the plaintiff was issued a policy numbered H-69046-6 through MPIUA. The effective date listed on the policy is October 12, 1976.

On October 5, 1976, the plaintiff's home was burglarized. MPIUA denied liability for this claim. MPIUA asserted that the policy was not in effect on October 5, 1976.

On January 25, 1978, the plaintiff instituted this action in the Dorchester District Court. The plaintiff claimed that MPIUA, through its agent Bay Colony, represented that his homeowner's policy took effect on September 2, 1976. Since a principal is bound by the representations of its agents, the plaintiff argued that his policy with MPIUA went into effect on September 2, 1976. Thus, the plaintiff asserted that MPIUA must compensate him for the loss that he suffered on October 5, 1976.

After trial, the trial judge ruled that Bay Colony was not an agent of MPIUA. In addition, the judge ruled that the

policy took effect on October 12, 1976. The plaintiff requested that these rulings be reported to the Appellate Division of the District Courts.[1] The judge did so. The Appellate Division concluded that there was no error and dismissed this report. The plaintiff appeals.[2]

We agree with the judge that Bay Colony is not an agent of MPIUA. In addition, we conclude that a policy issued through MPIUA may not take effect until MPIUA receives payment of the premium. Thus, we believe that the judge correctly ruled that the policy was not in effect until October 12, 1976.

1. *History of MPIUA.* The urban riots of 1967 brought the problems of our central cities to the nation's attention. In the aftermath of those disturbances, "Congress found that the vitality of many of our cities [was] being threatened

---

[1] The judge excluded MPIUA's written plan of operation. MPIUA sought a report of its objection to this exclusion. The Appellate Division did not rule on this issue. Since we affirm the Appellate Division's dismissal of the plaintiff's report, we need not discuss whether the judge properly excluded MPIUA's plan of operation.

MPIUA also claimed that the plaintiff never filed a notice of claim or proof of loss as required by the policy. Since we are in agreement with the result reached by the judge and the Appellate Division, we need not remand this matter for factual findings on this issue.

[2] This appeal is properly before us. A party may appeal to this court a final decision of the Appellate Division of the District Courts. G. L. c. 231, § 109. "A 'final decision' . . . means a decision which leaves nothing more open to dispute and which sets controversy at rest. . . . The test of the finality of a decision is whether it terminates the litigation on its merits, directs what judgment shall be entered and leaves nothing to the judicial discretion of the trial court." *Real Property Co.* v. *Pitt,* 230 Mass. 526, 527-528 (1918). See *Fusco* v. *Springfield Republican Co.,* 367 Mass. 904 (1975); *Stella* v. *Curtis,* 348 Mass. 458, 459 (1965). Cf. *Pollack* v. *Kelly,* 372 Mass. 469, 470 (1977); *Orasz* v. *Colonial Tavern, Inc.,* 365 Mass. 131, 134-135 (1974); *Lubell* v. *First Nat'l Stores, Inc.,* 342 Mass. 161 (1961). By initiating his action in the District Court, the plaintiff waived his appeal to the Superior Court. G. L. c. 231, § 103. See, e.g., *Moulton* v. *Brookline Rent Control Bd.,* 385 Mass. 228, 229 n.3 (1982). After prevailing at trial and in the Appellate Division, the defendant had no reason to appeal to the Superior Court, as it might have done if it had lost. See G. L. c. 231, § 104. Since the order of the Appellate Division left nothing to the discretion of the trial court, it is a "final decision" properly appealable to this court.

by the deterioration of their inner city areas. One aspect of this [was] that many responsible owners of properties in these areas [were] unable to obtain adequate property insurance coverage against fire, crime and other perils. This hasten[ed] the deterioration." *District of Columbia Ins. Placement Facility* v. *Washington,* 269 A.2d 45, 47 (D.C. Ct. App. 1970). See President's National Advisory Panel on Insurance in Riot-Affected Areas, Meeting the Insurance Crisis of our Cities (1968); Note, Fair Plans: History, Holtzman and the Arson-for-Profit Hazard, 7 Fordham Urb. L.J. 617, 618-621 (1979).

To alleviate this problem, Congress enacted the Urban Property Protection and Reinsurance Act of 1968, 12 U.S.C. § 1749 bbb et seq. The stated purpose of this act was to "encourage and assist the various State insurance authorities and the property insurance industry to develop and carry out statewide programs which will make necessary property insurance coverage against the fire, crime, and other perils more readily available for residential, business and other properties meeting reasonable underwriting standards." Pub. L. No. 90-448, § 1102, 82 Stat. 556 (1968). This act encouraged States to establish insurance placement facilities which would equitably distribute among the companies participating in each facility the risk of insuring hard-to-insure urban properties. Thus, the act shifts the burden of finding property insurance from the urban resident to an institutionalized structure that is geared to that task. Note, The Central City Insurance Crisis: Experience Under the Urban Property Protection and Reinsurance Act of 1968, 38 U. Chi. L. Rev. 665, 671 (1971). As an incentive for States to establish urban placement facilities, Congress provided Federal reinsurance against abnormally high property insurance losses from riots and other civil disturbances to companies that participated in the State plans.

Responding to this incentive, the Massachusetts Legislature mandated the creation of the Urban Area Insurance Placement Facility. G. L. c. 175C, inserted by St. 1968, c. 731, § 1. All insurance companies licensed to provide

basic property insurance within the Commonwealth were required to cooperate in the organization of the urban insurance placement facility now known as MPIUA. To make insurance more readily available to owners of property in urban areas, G. L. c. 175C, § 2 (3) (a), provides that "[e]very eligible applicant for basic property insurance upon proof that he has made a reasonable effort to obtain insurance and has been unable to obtain it shall be entitled on request to the facility to . . . a prompt inspection of his property by representatives of the facility . . . ." After inspection, the applicant receives a report indicating whether any of the insurance companies participating in the facility have agreed to provide coverage. G. L. c. 175C, § 2 (3) (b). If coverage has been agreed upon, the applicant obtains insurance "upon payment of the required premium to the company or companies, or agent thereof, that agree to provide the coverage." G. L. c. 175C, § 2 (3) (c).

2. *Agency.* The plaintiff bases his claim that Bay Colony is an agent of MPIUA on three different theories. (1) Since G. L. c. 175C, § 3, encourages brokers to obtain insurance for their customers through MPIUA, the plaintiff argues that the statute gives brokers, like Bay Colony, the express authority to act on behalf of MPIUA.[3] (2) Relying on G. L. c. 175, § 169, the plaintiff claims that Bay Colony is an agent of MPIUA as a matter of law. (3) The plaintiff also asserts that when a consumer purchases an MPIUA policy through a broker such as Bay Colony, he has good reason to believe that the broker is acting on behalf of MPIUA. Thus, the plaintiff concludes that Bay Colony has apparent or ostensible authority to act on behalf of MPIUA and that MPIUA is estopped from denying that Bay Colony is its agent. We do not agree with any of the plaintiff's theories.

a. *Express authority.* To achieve the congressional purpose of making property insurance more readily available in urban areas, G. L. c. 175C, § 3, as amended by St. 1969, c. 528, § 3, provides that "[n]o insurance company shall

---

[3] A judgment has been entered against Bay Colony.

direct any agent or other producer not to solicit business through the facility; no insurance agent shall direct any other agent in his employ or any broker or other producer not to solicit business through the facility; and no agent, broker or other producer shall be penalized in any way by an insurance company or employer producer for submitting applications to the facility." In addition, G. L. c. 175C, § 3, states that "[n]o insurance agent or broker licensed to sell basic property insurance shall be allowed to refuse a request for inspection from an eligible applicant for basic property insurance unless such applicant is: (a) Then indebted to any agent, broker or company for coverage requested; (b) Then unwilling to make satisfactory payment arrangements for the coverage requested." Relying on these provisions, the plaintiff claims that the statute expressly makes brokers like Bay Colony agents of MPIUA.

General Laws c. 175, § 162, as amended by St. 1941, c. 286, creates a distinction between insurance brokers and insurance agents. An insurance broker is a person other than an insurance agent, who for compensation "acts or aids in any matter in negotiating policies of insurance or annuity or pure endowment contracts, or placing risks or effecting insurance, or in negotiating the continuance or renewal of such policies or contracts for a person other than himself." An insurance agent is a person other than an insurance broker who for compensation, "solicits insurance on behalf of any company, or transmits for a person other than himself an application for a policy of insurance or an annuity or pure endowment contract to or from such company, or offers or assumes to act in the negotiation of any such policy or contract, or in the negotiation of its continuance or renewal." *Id.* Thus "[t]he insurance agent is the representative of the company, and the insurance broker is ordinarily the agent of the insured . . . ." 15 Mass. L.Q. 59 (No. 3, 1930). See *Michelson* v. *Franklin Fire Ins.*, 252 Mass. 336 (1925). "Insurance agents have a fixed and permanent relation to the companies they represent and have certain duties to such companies." *Black* v. *Illinois Fair*

*Plan Ass'n,* 87 Ill. App. 3d 1106, 1108 (1980), quoting *Gali-her* v. *Spates,* 129 Ill. App. 2d 204, 207 (1970).

Further, G. L. c. 175, §§ 163, 166, establish separate requirements for the licensing of brokers and agents. Under G. L. c. 175, § 163, an agent may only receive a license on written notice to the Commissioner of Insurance from the company. No notice from any insurance company is required for a broker's license. See G. L. c. 175, § 166.

In this case, the plaintiff introduced no evidence that any participating insurance company or MPIUA had notified the Commissioner that Bay Colony was its agent. In addition, Bay Colony had no fixed and permanent relationship with MPIUA. Pursuant to G. L. c. 175C, §§ 2, 3, Bay Colony was required to accept a request for a property inspection from an eligible applicant only if that applicant after reasonable effort had been unable to obtain insurance. Moreover, Bay Colony filled out and submitted the application for insurance at the plaintiff's request. Bay Colony was representing the plaintiff's interest when he procured the insurance through MPIUA. Thus, we conclude that Bay Colony was acting as an insurance broker and, therefore, it was the agent of the plaintiff. Cf. *Black* v. *Illinois Fair Plan Ass'n,* 87 Ill. App. 3d 1106, 1109 (1980). Since Bay Colony is not the express agent of MPIUA (see G. L. c. 175, §§ 162, 163), nothing that Bay Colony said in its role as an insurance broker is binding on MPIUA. Therefore, Bay Colony's representation that the policy took effect on September 2, 1976, was not binding on MPIUA.

b. *G. L. c. 175, § 169.* General Laws c. 175, § 169, provides that an insurance broker who acts "for a person other than himself in negotiating, continuing or renewing any policy of insurance or any annuity or pure endowment contract shall, for the purpose of receiving any premium therefor, be held to be the agent of the company." Relying on this statute, the plaintiff claims that Bay Colony is an agent of MPIUA by operation of law.

General Laws c. 175, § 169, "makes the payment of a premium to a broker payment to the company no matter what condition or stipulation may be contained in the con-

tract or policy to the contrary." *Ritson* v. *Atlas Assurance Co.*, 279 Mass. 385, 392 (1932). However, this statute does not affect "in any other respect the rights and obligations of the parties." *Id.* Thus, G. L. c. 175, § 169, does not make a broker the general agent of the insurance company. Nor does G. L. c. 175, § 169, make a broker who obtains MPIUA insurance for a customer an agent of MPIUA. Hence, we conclude that Bay Colony is not by operation of law an agent of MPIUA, and that MPIUA is not bound by any representations by Bay Colony.

c. *Apparent authority.* Apparent or ostensible authority "results from conduct by the principal which causes a third person reasonably to believe that a particular person . . . has authority to enter into negotiations or to make representations as his agent." W.A. Seavey, Agency § 8D, at 13 (1964). See Restatement (Second) of Agency § 8 (1958); H.G. Reuschlein & W.A. Gregory, Agency and Partnership § 23, at 57-58 (1979). See also *Neilson* v. *Malcolm Kenneth Co.*, 303 Mass. 437, 441 (1939); *Globe Ticket Co.* v. *Boston Retail Grocers' Ass'n*, 290 Mass. 235, 238 (1935). If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized. See W.A. Seavey, *supra* § 8E, at 14. Relying on the theories of apparent authority and agency by estoppel, the plaintiff claims that MPIUA is bound by the representations of Bay Colony.

From the report of the judge, it does not appear that the plaintiff proved that MPIUA did anything to cause him reasonably to believe that Bay Colony was its agent. The appearance of the policy number on the financing statement is not evidence of any representation or conduct by MPIUA. There is no evidence that MPIUA is responsible for placing the policy number on the financing statement. Moreover, the record does not indicate when this number was put on the financing statement. If the number were added to the financing statement after the plaintiff completed his purchase, he could not have relied on the policy number to

form a reasonable belief that Bay Colony was acting as an agent of MPIUA. Cf. *McCarthy* v. *Brockton Nat'l Bank*, 314 Mass. 318, 322 (1943).

Moreover, when a customer asks an insurance broker to obtain insurance for him directly from a company, the broker does not become an agent of that company. See 455, *supra*. When a customer retains a broker to obtain insurance through MPIUA, he has no reason to believe that the broker has become an agent of MPIUA. Thus, we conclude that Bay Colony has no apparent authority to act on behalf of MPIUA and that MPIUA is not estopped from denying that Bay Colony is its agent.

3. *Effective date of the policy.* Relying on G. L. c. 175, § 169, the plaintiff claims that the policy took effect on September 2, 1976, when he paid to Bay Colony $40 of the $65 premium and signed a financing statement for the remainder. The judge did not agree. He ruled that the policy took effect on October 12, 1976, the date MPIUA received payment. There was no error.

General Laws c. 175, § 169, makes the "broker who acts in negotiating" the policy of insurance an agent of the company "for the purpose of receiving any premium therefor." The words "broker who acts in negotiating" as used in the statute mean the broker "who obtained and finally settled the terms and conditions of the policy with the insurer." *Morton Furniture Co.* v. *Dubuque Fire & Marine Ins. Co.*, 287 Mass. 170, 175 (1934).

In this case, Bay Colony was not the broker who negotiated the policy. That task fell to MPIUA. It is MPIUA who settles the terms and conditions of the policy with the companies who provide coverage. See G. L. c. 175C, § 2 (3). Thus, MPIUA is the broker who negotiated the plaintiff's policy under G. L. c. 175, § 169. Payment to MPIUA is equivalent to payment to the company.

In addition, G. L. c. 175C, § 2 (3) (c), says that an MPIUA policy will take effect "upon payment of the required premium to the company or companies, or agents thereof, that agree to provide the coverage." Reading G. L.

c. 175C, § 2 (3) (c), and G. L. c. 175, § 169, together, we conclude that a policy obtained through MPIUA is effective when MPIUA receives payment.[4]

This result is consistent with the purposes of the Urban Property and Protection Act and G. L. c. 175C. Prior to the enactment of the Urban Property and Protection Act, owners of urban property often could not obtain insurance. Thus, they did not benefit from the protections afforded by G. L. c. 175, § 169. As a result of the Urban Property and Protection Act and G. L. c. 175C, insurance for urban property has become more readily available. See Note, The Central City Insurance Crisis: Experience Under the Urban Property Protection and Reinsurance Act of 1968, 38 U. Chi. L. Rev. 665, 673 (1971). To require insurance obtained through MPIUA to become effective when the broker receives payment of the premium, rather than at the time MPIUA receives payment, might undermine this program. See *id.*

*Order dismissing report affirmed.*

---

[4] Other States require payment of the premium to the insurance placement facility before a policy is effective. See, e.g., Code Conn. Regs. § 38-114F-5 (1980); La. Rev. Stat. Ann. § 22:1406.9 (West Supp. 1981); N.J. Stat. Ann. § 17:37A-8(b)(3) (West Supp. 1981); N.Y. Ins. Law § 653(1)(b) (McKinney Supp. 1981). Some States require that the servicing insurer receive payment of the premium before the policy takes effect. See, e.g., Mo. Ann. Stat. § 379.830(2) (Vernon Supp. 1982).