Lauriat, Peter M., J.
This action for breach of contract and declaratory relief arises from so-called fronting insurance arrangements and related reinsurance contracts between Employers’ Liability Assurance Corporation (“ELAC”), OneBeacon Insurance Company’s (“OneBeacon”) predecessor, and, among others, defendants British Aviation Insurance Company, Ltd. (“British Aviation”); Phoenix Assurance Company, Ltd. (“Phoenix”); Motor Union Insurance Company Limited (“Motor Union”); British Law Insurance Company, Ltd. (“British Law”); AXA Belgium SA (“AXA Belgium”); and Insurance Company of North America (UK) Ltd. (“North America (UK)”) or their predecessors (collectively, the “Moving Party Reinsur-ers”). The matter is before the Court on the Moving Party Reinsurers’ motions to dismiss,[1] pursuant to Mass.R.Civ.P. 12(b)(2), for lack of personal jurisdiction or, in the alternative, under the doctrine of forum non conveniens. For the reasons set forth below, the Moving Party Reinsurers’ motions to dismiss are allowed pursuant to Mass.R.Civ.P. 12(b)(2).[2]
BACKGROUND
For the purposes of this motion, the court views the allegations of the complaint, as well as all inferences drawn therefrom, in the plaintiffs favor.[3] Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47 (1998). In analyzing a motion to dismiss under Rule 12(b)(2), the court may properly consider affidavits, attachments, answers to interrogatories, and deposition testimony. Heins v. Wilhelm Loh Wetzler Optical Machinery GmbH & Co. KG, 26 Mass.App.Ct. 14, 15 (1988).
The record before the court reveals the following facts. OneBeacon is organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in Massachusetts. OneBeacon was formerly known as Commercial Union Insurance Company (“Commercial Union”). Commercial Union was formerly known as Employers Commercial Union Insurance Company (“Employers Commercial”), and is a successor to ELAC. At all relevant times, ELAC was a British-incorporated and British-headquartered insurer operating out of London, England, with a United States branch headquartered in Boston, Mass.
Defendants British Aviation, Phoenix, Motor Union, British Law, and North America (UK) are all insurance companies organized under the laws of the United Kingdom, with their principal places of business in the United Kingdom. Defendant AXA Belgium, as successor to L’Union des Proprietaires Beiges is an insurance company organized under the laws of the kingdom of Belgium, with its principal place of business in Belgium. It is undisputed that none of the Moving Party Reinsurers maintains an office or place of business in Massachusetts, owns or leases real property in Massachusetts, has bank accounts or other assets in Massachusetts, or has any employees or agents in Massachusetts.
Prior to 1968, Lloyd’s London and various British insurance companies (collectively, the “London Market Insurers”) provided excess insurance policies to B.F. Goodrich Company (“Goodrich”), a New York corporation headquartered in Ohio. On December 1, 1967, according to the complaint, a London-based broker, Willis, Faber & Dumas, Ltd. (“Willis”), by telex to ELAC’s Boston office, sought ELAC’s participation from ELAC’s U.S. branch as a fronting domestic United States insurer for the renewal of Goodrich’s umbrella policy.[4] Insureds often preferred policies issued by admitted, domestic insurers, such as ELAC. Because the London Market Insurers were not admitted in Ohio, Goodrich’s home state, Willis sought this “fronting” arrangement, under which ELAC provided excess coverage to Goodrich, retained a small portion of the risk, here five percent, and ceded most of the risk (and most of the premiums) to the reinsurers.
Willis subsequently confirmed the participation of other carriers from England, Belgium, Switzerland, and elsewhere (collectively, the “reinsurers”), including the Moving Party Reinsurers. The reinsurers issued, in London, confirmations to ELAC in the form of “slips,” one-page written documents prepared by Willis, containing the terms and the extent of the reinsurance. The terms and extent, however, were never formalized into a written reinsurance agreement. Consequently, there is no evidence as to terms regarding jurisdiction in the event of a legal dispute, service of suit, choice of law or forum selection. All that the slips include, in this regard, is a reference to a “Service of Suit Clause.” On the two slips dated 1968 and the two dated 1969 the words stand alone; on the slip dated 1972 they are subsumed as “Conds.” There is no actual “Service of Suit Clause” attached to or included in any of the slips and no indication with respect to the parties’ agreement regarding the provisions of any such clause. Coverage was designated in U.S. dollars, and Goodrich paid the premiums, in dollars, to the reinsurers in London. ELAC issued to Goodrich certain insurance policies from 1968 to 1974 (the “ELAC Policies”) under this fronting arrangement, *138 with different reinsurers covering different portions of the risk.
Goodrich submitted a claim under the ELAC Policies in connection with environmental contamination in Calvert City, Kentucky. OneBeacon contested coverage under the ELAC Policies in the Court of Common Pleas, Summit County, Ohio. The case was tried to a juiy, which found for Goodrich. The trial court entered final judgment in favor of Goodrich and against One-Beacon in Januaiy 2007 including a declaration that OneBeacon was required to pay Goodrich remediation and defense costs that Goodrich would occur subsequent to September 30, 2005. After exhausting its appeals, OneBeacon satisfied the judgment against it in 2009.
OneBeacon contends that it has billed and continues to bill the reinsurers for their allocable share of the judgment amounts, specifying in the complaint bills dated April 29, 2009, May 20, 2009, July 7, 2009, and July 14, 2010. The complaint claims that the reinsurers have failed and refused to acknowledge their obligations under the fronting arrangements and reinsurance contracts for a total amount that OneB-eacon estimates to be $72,000,000. OneBeacon filed the present action on December 1, 2009. The Second Amended Complaint asserts breach of contract (Count I) and seeks declaratory relief regarding its rights and the defendants’ obligations (Count II). The Moving Party Reinsurers now claim that the court lacks personal jurisdiction over them pursuant to G.L.c. 223A, §5, and have moved to dismiss under Mass.R.Civ.P. 12(b)(2) or, in the alternative, on grounds offorum non conveniens.[5]
DISCUSSION
A claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) whether the plaintiffs assertion of jurisdiction is authorized by the Commonwealth’s longarm statute, and (2) whether the defendant has the requisite minimum contacts with the forum so that the exercise of personal jurisdiction is consistent with the due process requirements of the United States Constitution. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Only when both questions are answered affirmatively can the court properly exercise jurisdiction.
The Massachusetts Longarm Statute, G.L.c. 223A, §3, authorizes jurisdiction over a person to the limit allowed by the federal Constitution. Automatic Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 443 (1972). OneBeacon bears the burden of establishing by sufficient factual allegations that personal jurisdiction over the Moving Party Reinsurers exists under the Longarm Statute. Cunningham v. Ardrox, Inc., 40 Mass.App.Ct. 279, 282 (1996); Hood v. American M.A.N. Corp., 20 Mass.App.Ct. 937, 939 (1985).
As an initial matter, OneBeacon argues that the court must apply a prima facie standard to its consideration of the evidence. In evaluating a prima facie showing, the court acts as a data collector rather than as a fact finder, and takes the facts “affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiffs jurisdictional claim.” Cepeda v. Kass, 62 Mass.App.Ct. 732, 738-39 (2004) (internal quotations and citations omitted). Primafacie evidence is “evidence which, standing alone and unexplained, maintains the proposition and warrants the conclusion to support which it is introduced.” Id. at 738 (internal quotations and citations omitted). The court agrees with OneBeacon. See, e.g., Massachusetts Inst. of Tech. v. Micron Tech., 508 F.Sup.2d 112, 116 (D.Mass. 2007). However, even under this lenient standard, OneBeacon has failed to meet its burden of production.
OneBeacon first argues that the court can exercise personal jurisdiction under G.L.c. 223A, §3(a) because the Moving Party Reinsurers purposefully solicited business in Massachusetts. As support therefor, it contends that the Moving Party Reinsurers approached ELAC at its U.S. Branch headquarters to suggest the fronting arrangement, and that ELAC issued the ELAC Policies through its Massachusetts office.
Courts have construed the “transacting business” provision broadly, such that it reaches the purposeful solicitation of business from residents of the Commonwealth by a non-resident defendant or his agent. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Heins v. Wilhelm Loh Wetzlar Optical Mach., 26 Mass.App.Ct. 14, 17 (1988). Even under the broad sweep of c. 223A, §3(a), the court concludes that the above facts do not constitute transacting business. It is clear that Willis, not the Moving Party Reinsurers, contacted ELAC by telegraph asking if ELAC was interested in participating in the renewal of the Goodrich umbrella policy. ELAC answered in the affirmative. Nothing in the communication would indicate that the Moving Party Reinsurers were in any way involved. Nor has OneB-eacon provided any facts from which the court can infer that Willis was acting as the agent of or on behalf of the Moving Party Reinsurers, or that they at any time requested Willis to contact ELAC. Absent facts to the contrary, the presumption is that an insurance broker acts as the agent of the insured. See Booker, 657 F.Sup. at 282 (“It is the recognized custom and usage of the London insurance market that the broker is the agent of the insured for most purposes ...”). See also Hudson v. Massachusetts Prop. Underwriting Assoc., 386 Mass. 450, 455 (1982) (“[t]he insurance agent is the representative of the company, and the insurance broker is ordinarily the agent of the insured . . .”).
As to the ELAC Policies, while they were issued in Massachusetts, they were issued to Goodrich. The Moving Party Reinsurers were not parties to those *139 policies. The agreements to which the Moving Party Reinsurers were parties, the slips, were negotiated and entered into in London.
OneBeacon next points to G.L.c. 223A, §3(f), which provides jurisdiction over a person “contracting to insure any person, property or risk located within this commonwealth at the time of contracting.” However, the risks that the Moving Party Reinsurers undertook are related to umbrella policies issued to Goodrich, an New York corporation. See Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 34 n. 1 (1st Cir. 2000) (“Reinsurance is a contractual arrangement whereby one insurer . . . transfers all or a portion of the risk it underwrites ... to another insurer . . .”}, quoting Barry R. Ostranger & Thomas R. Newman, Handbook on Ins. Coverage Disputes §15.01, at 776 (9th ed. 1998) (internal quotations omitted). The Moving Party Reinsurers therefore covered risks that Goodrich could have incurred anywhere it was liable. In this case its loss occurred in Kentucky. The court cannot therefore exercise personal jurisdiction pursuant to G.L.c. 233A, §3(f).
Even if the defendants’ actions fell within the reach of the longarm statute, personal jurisdiction does not lie unless it comports with the requirements of the due process clause of the Fourteenth Amendment of the United States Constitution. Good Hope Indus, at 5-6. Due process is satisfied if the defendant had some “minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action.” Good Hope Indus., 378 Mass. at 7. If the plaintiffs claim arises from the non-resident’s activities in Massachusetts, the court may assert jurisdiction over the defendant as to that specific claim, even if the non-resident does little business in Massachusetts. Sawtelle v. Farrell 70 F.3d 1381, 1389 (1st Cir. 1995). If the plaintiffs claim does not arise out of the non-resident’s specific activities in Massachusetts, the court may take jurisdiction over a non-resident only if the non-resident’s general activities within Massachusetts are continuous and systematic. See, e.g., Helicopteros Nacionales de Columbia, S.A. v. Hall 455 U.S. 408, 414-16 (1984).
OneBeacon cannot prevail under either standard. As the court has already concluded, the Moving Party Reinsurers did not initiate contact with ELAC, and there is no evidence that Willis was acting on their behalf or at their request. Jurisdiction based on the plaintiffs specific claim therefore cannot lie.[6] As to general jurisdiction, on pages five through eight of its “Supplemental Memorandum in Opposition to Moving Party Reinsurers’ Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens,” One-Beacon lists several instances when it claims each Moving Party Reinsurer had contact with Massachusetts, either as direct insurers or reinsurers of Massachusetts corporations, or as members of an insurance syndicate.
The court is not persuaded. Assuming that the facts asserted are true, no Moving Party Reinsurer had any contact with any Massachusetts entity after 1993. Although the parties have not cited to any Massachusetts case on the point, cases in other jurisdictions have noted that the court should examine the nonresident’s contacts with the forum over a period of time that is reasonable under the circumstances to assess jurisdiction under the “continuous and systematic” standard. See, e.g., Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569-80 (2nd Cir. 1996) (defendant’s contacts with the forum are generally assessed over a period of years ranging from three to seven years prior to the filing of the complaint. Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall 466 U.S. 408, 409-41 (1984)); Wilson v. Belin, 20 F.3d 644, 650-51 (5th Cir. 1994); Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987); Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1329, 1330-31 (9th Cir. 1984)). See also Pacific Employers Ins. Co. v. AXA Belgium S.A., 785 F.Sup.2d 457, 468-69 (E.D.Pa., 2011), and cases cited (where the court concluded that nine years prior to the filing of the cause of action was a reasonable time within which to assess contacts). This court concludes that in determining whether it can assert personal jurisdiction generally over the Moving Party Reinsurers, it is not reasonable to consider contacts that the Moving Party Reinsurers had with Massachusetts over sixteen years prior to the time that this action was filed.[7]
Finally, OneBeacon contends that the Moving Party Reinsurers contracted to submit to jurisdiction in Massachusetts. As support for this argument, it relies on the reference in the slips to the phrase “Service of Suit Clause.” According to OneBeacon, a Service of Suit Clause accompanying insurance policies or reinsurance contracts that covered U.S.-based reinsurance “always vested jurisdiction in U.S. court.” According to OneBeacon’s expert witness, John Holford, the Service of Suit Clause referenced in the 1968 and 1969 reinsurance slips meant Lloyd’s “standard U.S. Service of Suit Clause because that Clause was used on all insurance and reinsurance contracts for U.S. based risks at that time.”
The flaw in OneBeacon’s argument is that the slips, on their face, say nothing about jurisdiction in the United States or anywhere else. While OneBeacon points to a standard clause used at that time, that clause is not included in or attached to the slips and appears nowhere in the documents that are before the court that represent Willis’s process of obtaining reinsurance from various reinsurers. Moreover, the standard Service of Suit Clause that OneBeacon asserts pertains, has “U.S.A.” in parentheses in the title. There is no parenthesis after those words in any of the slips. This omission is particularly glaring where, in the two *140 1969 slips, under the words “Service of Suit Clause” are the handwritten words “Uniform Insolvency Clause (USA).” If the parties had wanted to designate the United States as the place of service, they could have added a similar parenthetical. They apparently chose not to do so.
ORDER
For the forgoing reasons, the Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conve-niens (Paper # 80), and Defendant Insurance Company of North America (UK) Ltd.’s Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conve-niens (undocketed) are ALLOWED.

British Aviation, Phoenix, Motor Union, British Law and AXA Belgium have jointly filed their motion. North American (UK) has filed a separate motion. Because the facts, issues and arguments are the same, the court will consider the motions together.

In light of the conclusion this court reaches, it does not reach or address the Moving Party Reinsurers’ arguments with respect to jorum non conveniens.

Both sides have moved to strike portions of various affidavits. The court has not considered any of the disputed affidavit statements in reaching its decision. The motions to strike are therefore denied as moot.

‘The London insurance market is known as a ‘subscription market,’ where numerous companies and/or syndicates subscribe to a percentage of each contract of insurance. Coverage is placed through London brokers.” Great Ledge Dredge & Dock Co. v. Commercial Union Assurance Co., 57 F.Sup.2d 525, 530-31 (N.D.Ill. 1999). Typically, entities that want to buy insurance through Lloyd’s can only do so through a broker who has been approved to place risks with Lloyd’s syndicates. Travelers Indem. Co. v. Booker, 567 F.Sup. 280, 282 (D.D.C. 1987). Brokers contact individual underwriters or agencies which manage individual syndicates, and submit to them a broker’s “slip” setting out the details of the risk. Id. at 283. The broker negotiates the insurance terms and premiums, and the first underwriter to reach agreement on the terms and to subscribe to the “slip” becomes the lead underwriter. Id. The underwriter initials the slip and indicates the percentage of the risk to which he is subscribing. Id. The broker then approaches successive underwriters until 100 percent of the risk is placed. Id.

The moving reinsurers moved to dismiss the First Amended Complaint. Subsequent to their motion, OneB-eacon filed its Second Amended Complaint, which the court has before it and which includes the Moving Party Reinsurers as defendants. The parties have not provided the court with the First Amended Complaint assuming, perhaps, that the court has easy access to the entire file. Given the lack of resources, however, and the 144 papers already on file in this litigation, that is not the case. The court will therefore address the motion to dismiss in the context of the Second Amended Complaint.

The court is not persuaded by OneBeacon’s argument that the Moving Party Reinsurers “puiposefully availed” themselves of Massachusetts laws when they (and other reinsurers) sent lawyers to Massachusetts to review OneBeacon’s (then Commercial Union) files during the pen-dency of the Goodrich action and after the litigation was resolved. The record reveals that lawyers representing the Moving Party Reinsurers traveled to Massachusetts to review Commercial Union’s file on the Goodrich claim in December 1997 and again in 1999, and thereafter had conversations and corresponded with a Massachusetts representative of Commercial Union. Following the conclusion of the litigation, Commercial Union sought and billed for reinsurance reimbursement. Lawyers representing the Moving Party Reinsur-ers requested to review Commercial Union’s files in connection with that bill. They traveled to Massachusetts for one week in July 2009, for that purpose. The court does not consider these contacts sufficient to establish transacting business. See; e.g., Rossi v. Wohl, 246 F.App’x 856, 858 (5th Cir. 2007) (agreeing with holding of district court that an attorney’s contacts incidental to the representation of a client and contacts arising out of the representation are insufficient to establish minimum contacts); Sher v. Johnson, 911 F.2d 1357, 1360, 1362-63 (9th Cir. 1990) (finding no personal jurisdiction in California court over partners of Florida law firm in a malpractice action arising out of representation in Florida case where at most one of the partners made phone calls to and sent letters to California, and traveled to the state on several occasions to provide services to his client); Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987) (refusing to exercise personal jurisdiction over a New York law firm representing a South Dakota corporation in Maryland litigation, where the contacts included a single three-day document and information gathering visit by an associate and law clerk from the firm because the defendants did not have an office in the forum, had never advertised or solicited business in the forum, did not actively seek out the in-forum plaintiff as a client, none of the law firm’s attorneys resided in the forum or maintained a license to practice law there, and the actions giving rise to the lawsuit did not occur in the forum); Star Tech, Inc. v. Tultex Corp., 844 F.Sup. 295, 298 (N.D.Tex. 1993) (declining to exercise personal jurisdiction over a District of Columbia lawyer in Texas when his only connections with the forum in connection with the representation of his co-defendant included associating himself with a local Texas law firm for the purpose of representing his client, having his name appear on pleadings, and making two trips to Dallas for the purpose of participating in settlement discussions, mediation, discovery, and arguing a discovery motion); Steinhilber v. Lamoree, 825 F.Sup. 1003, 1006 (S.D.Fla. 1992) (declining to exercise personal jurisdiction over non-resident lawyers who attended, at the direction of a Missouri court, a settlement conference in Florida, where the plaintiff resided); and Weiss v. Greenburg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, P.A., 446 N.Y.S.2d 447, 448-49 (N.Y.App.Div. 1981) (refusing to exercise personal jurisdiction over a Florida law firm sued by the plaintiff, a New York resident, based on a Florida foreclosure action because knowledge that the plaintiff was a New York resident and travel by the firm’s employees to New York to conduct or attend depositions related to the Florida litigation were not sufficient alone to establish personal jurisdiction).

OneBeacon’s reliance on Wolfman v. Modem Life Ins. Co., 352 Mass. 356 (1967), is inapposite. In Woljman, the court held that service on a foreign insurer by service on the Insurance Commissioner under G.L.c. 175B, §2 was constitutionally valid although the insurance policy was issued and sold in New York. Id. at 367. However, the insurer had made delivery of the policy to the plaintiff in Massachusetts, replied to the plaintiffs request from Massachusetts for a calculation of the amount of the premium if he prepaid future premiums, and the plaintiff paid that sum from Massachusetts. Id. at 358-60. The court in Automatic Sprinkler cited to Woljman for the proposition that “only the barest of contacts with the State are required for jurisdiction over insurers, the insurance field lending itself to the furthest extension of jurisdiction based on an isolated contact.” 361 Mass at 446. The court went on to state that “We see a distinction in such cases because of the nature of interstate insurance business where such insurers commonly choose to do business across State lines.” Id. Nonetheless, the court, quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958), stated that “[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the *141 forum State, thus invoking the benefits and protections of its laws.” Id. This court therefore does not read the holding in Wolfman as providing per se personal jurisdiction over an insurer, in tire absence of some purposeful action availing itself of the privilege of conducting activities in Massachusetts.